**CASE BEING CONSIDERED FOR TREATMENT UNDER RULE 34(j)**

UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

| | | |
|---|---|---|
| PHILLIP S. WOODRUFF, | ) | |
| | ) | |
| Appellant | ) | |
| | ) | |
| | ) | Case No.: 05-5033 |
| v. | ) | |
| | ) | |
| NORMAN Y. MINETA, Secretary | ) | Sept. Term, 2004 |
| United States Department of Transportation | ) | |
| | ) | |
| Appellee | ) | |
| | ) | |
| | ) | |
| | ) | |

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---

APPELLANT'S FINAL BRIEF

---

Phillip S. Woodruff, Pro Se
10812 Brookwood Avenue
Upper Marlboro, Maryland  20772
(301) 868-9383

## CERTIFICATE AS TO PARTIES, RULINGS AND RELATED CASE

### PARTIES

Phillip S. Woodruff, Pro Se
10812 Brookwood Avenue
Upper Marlboro, MD  20772

Kenneth L. Wainstein, U.S. Attorney
Craig Lawrence, Assistant U.S. Attorney
William R. Cowden, Assistant U.S. Attorney
Judiciary Center Building
555 Fourth Street, N.W., Room 10-114
Washington, D.C.  20530

### RULINGS UNDER REVIEW

Order of the United States District Court for the District of Columbia dated January 3, 2005 by Honorable Ricardo M. Urbina

### RELATED CASE

None.

i

## TABLE OF CONTENTS

PAGE

CERTIFICATE AS TO PARTIES, RULINGS AND RELATED CASES......i

TABLE OF CONTENTS..................................................................1

TABLE OF AUTHORITIES  ........................................................2-3

OPINION BELOW...................................................................4

JURISDICITION....................................................................4

ISSUES PRESENTED.............................................................4-5

STATEMENT OF THE CASE....................................................6-9

STATEMENT OF FACTS.......................................................10-13

SUMMARY OF ARGUMENT.................................................14-15

ARGUMENTS....................................................................16-25

CONCLUSION...................................................................26-27

CERTIFICATE OF SERVICE....................................................28

## TABLE OF AUTHORITIES

<u>CASES</u>                                                                                     <u>PAGE</u>

*Nygren v. Ashcroft*, 109 Fed. App. 816 (2004)....................................15

*Bailey v. United States Postal Service*, 208 F. 3d 652, 654 (2000)............15

*Allen v. Runyon,* Doc No. 595093 (1996) WL 391224 at *3...................16
(EEOC July 8, 1996).

*Pauling v. Secretary of the Dept. of the Interior*, 960 F. Supp. 793, 803 .....16
(1997)

*Cf. Schrader v. Tomlinson,* 311 F. Supp. 2d 21, 27 (2004)....................16

*Warren v. Department of the Army*, 804 F.2d 654..............................17

*Crady,* 933 F.2d at 136.................................................................17

*Kocsis,* 97 F.3d at 886; *Grande,* 83 F. Supp. 2d at 563.........................17

*Clark v. U.S. Postal Service,* MSPB Docket No. ..............................18
NY-0752-95-0155-1-1

*National Treasury Employees Union v. IRS,* 101FLRR 2-1189...............18

*Metropolitan Life Insurance Co. v. McCarson,*
467 So. 2d 277, 278-279 (1985).....................................................20

*Brown v. Brody,* 199 F.3d 452-453
(citing *Mitchell v. Baldridge,* 759 F2d 80, 86 (1985)...........................23

*Cones v. Shalala,* 199 F. 3d 512, 520 (2000)....................................23

*Childers v. Slater,* 44 F. Supp. 2d 8, 18 (1999)..................................23

*Anderson v. Liberty Lobby,* 477 U.S. at 255......................................23

*Hill v. Lockheed Martin,* 354 F.3d at 283.........................................23

*Albritton v. Kantor,* 944 F. Supp, 970 ...........................................25

2

STATUTES                                                                                 PAGE

29 C.F.R. §1614.105(a)(1)…………………………………………………15

29 CFR § 1630.2(g), (1), (2) and (3)……………………………………18

29 CFR §1614.203(a)(6)…………………………………………………19

Restatement (Second) of Torts §46 (1965)…………………………………20

## OPINION BELOW

The final judgment of the United States District Court for the District of
Columbia is unreported.

## JURISDICTION

The final judgment of the United States District Court for the District of
Columbia was entered on January 3, 2005. Notice of Appeal was timely filed on March
15.2005. This courts jurisdiction is invoked pursuant to the Federal Rules.

## STATEMENT OF THE ISSUES

Whether the District Court erred in dismissing Plaintiff's Complaint for disability
discrimination, reprisal and for other causes of action, and

(1).     failure to fully exhaust all administrative remedies using the date of April
30, 1998, when the Court ruled on August 7, 2002 that July 10, 1998 was the date in
which the claims about the Defendant's actions are to begin; and

(2).  in finding that Plaintiff failed to exhaust his administrative remedies by not
seeking counseling prior to July 1998; and

(3).  whether Title VII prohibits Appellant from claiming that the series of actions
taken by Defendant constitute a continuing violation, thereby negating the 45 day
deadline in which to contact an EEO counselor; and

(4).  in finding insufficient evidence of retaliation as a matter of law, when the
records and findings of the Court show that adverse personnel actions and prohibited
personnel actions in fact occurred; and

(5).  not allowing the Plaintiff the benefit of a jury trial when it was determined
that disability discrimination did in fact occur, and.

4

(6). failing to give sufficient weight and consideration to the exhibits offered by Appellant in support of his argument that Defendant's proffered explanation for the adverse action was mere pretext for discrimination, and

(7). failing to consider the Appellant's second claim for retaliation incorporated into the instant action in the Second Amended Complaint and that the District Court did not address the second retaliation claim and therefore erred in not considering this properly pleaded claim in its deliberation, and further

(8) Appellant's constitutional right to have his claims heard by a jury, when there is genuiness of material fact.

STATEMENT OF THE CASE

Mr. Woodruff is a long-term government employee with a history of superior

performance. He was recruited by the FAA approximately 20 years ago to revitalize the

agency's aviation education program. During his tenure at the FAA, Mr. Woodruff led

the FAA to the leadership role in the world of aviation education. He began the work on

the Department of Transportation's Education Program and in 1996 served as the

Chairman of the Secretary's of Transportation Education Committee. [Memo re Detail to

Office of the Secretary of Transportation – 2/12/97; Duties and Responsibilities Office of

the Secretary of Transportation; Position Description; Detail Agreement between OST

and FAA] Currently, Mr. Woodruff is a Senior Management employee on LWOP due to

an on-the-job accident, and is in the process of retiring from Federal Service on total

disability.

This case involves disability discrimination and reprisal, along with other claims

by Mr. Woodruff's against his former supervisor, Carson Eoyang, and others, and a

continuation of the disability and age discrimination, in addition reprisal action, through

the subsequent years. [Plaintiff's Initial Complaint; Plaintiff's Amended Complaint;

Plaintiff's Second Amended Complaint]

Mr. Woodruff was injured in September 1995 as a result of an on-the-job

accident, at FAA Headquarters. Following this accident, Mr. Woodruff continued to

work in his role as Division Manager, GM-15, with accommodations of flexible work

schedule and telecommuting that had been approved by his manager, Dr. James Boone

(SES). In 1996, while on detail to the U.S. Secretary of Transportation and the U.S.

6

Senate, Carson Eoyang was hired by the FAA and became Mr. Woodruff's supervisor of record.

Prior to the time of the instant claim in district court, Mr. Woodruff initiated the EEO process to complain of certain actions taken by his then supervisor, Carson Eoyang. Mr. Woodruff previously filed formal EEO complaints against Mr. Eoyang in 1996 and 1997. These claims were in the discovery and/or mediation process at the time the events complained of in the instant complaint arose. During this time, Mr. Woodruff had continual ongoing contact with the Agency EEO counselor and management about the continuing discrimination and adverse actions. [10/98 email re mediation; EEO Reports of Investigation; ROI- DOT 2-99-2029, 4/11/00; ROI – DOT 2-01-2053, 1/1/02; ROI – DOT, 2-97-2057, 3/23/98; EEO Counselor's Report, 2-99-2029; EEO Counselor's Report – DOT, 2-97-2057; Deposition of Phillip S. Woodruff; Handwritten EEO Complaint; 4/98 – Request for Hearing]

Mr. Woodruff filed an EEO complaint on December 1, 1998 against Carson Eoyang. The agency refused to mediate and Mr. Woodruff brought suit on September 14, 2001. [11/98 Mediation Failure]

The Agency moved to dismiss Mr. Woodruff's complaint on January 29, 2002, arguing that Mr. Woodruff became aware of Eoyang's alleged discrimination no later than April 30, 1998 and that Mr. Woodruff failed to contact an EEO counselor within forty-five days of that date.

On August 7, 2002, the court granted in part and denied in part the Agency's motion to dismiss. The court noted that a forty-five day filing requirement, calculated from April 30, 1998, would make June 15, 1998 the final day Mr. Woodruff could have

initiated a charge with the agency. However, the court noted that Mr. Woodruff stated that the Agency discriminated against him on July 10, 1998. The Court states that Mr. Woodruff took the position that he would not challenge any actions the Agency may have taken against him in April 1998. Accepting Mr. Woodruff's well-pled facts as true for the purposes of the motion to dismiss, the court denied the Agency's motion but clarified that only claims about the Agency's actions in July 1998 could proceed. The Agency also sought dismissal on the basis that Mr. Woodruff did not raise his claims in his administrative complaint. The court rejected that argument. The court requested that Mr. Woodruff file an amended complaint which he did in 2002 and a second amended complaint in 2004. [Second Amended Complaint] The second amended complaint summarized a series of events that worked to divest Mr. Woodruff of his substantive professional duties, to remove his reasonable accommodations for his disability, and to retaliate against him in response to his prior EEO activity.

At the time Mr. Woodruff filed his initial complaint in the District Court on September 14, 2001, he had two formal EEO claims before the agency. The second claim gave rise to the district court action. Mr. Woodruff later filed a third EEO claim for retaliation relating to further erosion of his supervisory responsibilities; this third claim rose subsequent to the filing of the instant action but was eventually joined to this claim and added to this lawsuit with the filing of the Second Amended Complaint. The District Court did not address at all the third retaliation claim added in the Second Amended Complaint in its decision.

In 2004, the District Court Judge ordered settlement discussions and for the agency to produce a settlement offer. The agency demurred.

8

On June 28, 2004, the Agency filed a Motion for Summary Judgment stating there was no genuine issue as to any material fact and the Agency was entitled to judgment as a matter of law. The Plaintiff filed the Response to the Motion for Summary Judgment on July 26, 2004. [Plaintiff's Opposition to Motion for Summary Judgment, Plaintiff's Memorandum in Opposition]

The Court granted the Agency's Motion for Summary Judgment on January 3, 2005. [Judge Urbina's Opinion and Memorandum]

The District Court found that Mr. Woodruff did not contact an EEO counselor by June 15, 1998, or within forty-five days of his receipt of the April 30, 1998 memorandum from Eoyang and since Mr. Woodruff sought EEO counseling in August 1998, he failed to exhaust his administrative remedies. This is not true. Mr. Woodruff was in constant contact with EEO counselor, as reported, and was in EEO mediation discussions.

The District Court found that Mr. Woodruff did in fact state actionable adverse personnel actions for changes in his job responsibilities and commuting arrangements, however that nine months was too much time between an adverse action and protected activity to establish causation, as a matter of law, is not justifiable.

On March 17, 2005, Mr. Woodruff filed his Appeal with the United States District Court of Appeals for the District of Columbia. [Plaintiff's Appeal, Plaintiff's Statement of Issues]

## STATEMENT OF THE FACTS

Phillip Woodruff sustained an on-the-job injury on September 29, 1995, while working at the FAA Headquarters. At the time, he was a GM-15, Division Manager level Supervisor at FAA Headquarters in the Office of Human Resources Management. He immediately filed all appropriate documentation with the Agency and OWCP and his claim was accepted without question. Mr. Woodruff had telecommuting and a flexible work schedule approved prior to and following the on-the-job accident. [1995 Telecommuting Agreement] Mr. Woodruff continued to work full-time for nearly two years following the on-the job-injury, until May 1, 1997 at which time he underwent surgery at Johns Hopkins Hospital, for his on-the-job injury. Note: Mr. Woodruff was on detail with the Office of the Secretary Of Transportation and the United States Senate for the majority of this time period. Note: Mr. Woodruff had official responsibility and authority for certain FAA programs while on detail. Agency management in the Office of Human Resources changed during this period, from September 1995 to May 1997. Following the surgery, Mr. Woodruff was on approved OWCP Leave Without Pay (LWOP) for approximately nine (9) months. He returned to work on a part-time basis, in early February 1998. [2/9/98 Letter from Eoyang; 2/20/98 memo from Woodruff] Mr. Woodruff resumed his full-time work schedule in March 1998, however he was *not* returned to his position and duties as Division Manager *as required by law*. FECA. Mr. Woodruff's position did still exist and was being held by his recently appointed supervisor, Carson Eoyang, the very person who was denying the return to duties and subsequent request for accommodations. Mr. Woodruff repeatedly requested that he be returned to his managerial position since he had returned to full-time duty within a year.

10

[3/27/98 email to Eoyang; 3/27/98 to Eoyang no. 2; 4/1/98 email re teleconference duties; 4/29/98 email from Woodruff; 4/30/98 memo from Eoyang re responsibilities; 5/1/98 Woodruff reply to letter; 5/1/98 Johns Hopkins letter; 5/98, ltr from Dr. McFarland; 6/30/98 email from Eoyang; 7/6/98 email to DeHart]  The Agency's refused. Mr. Woodruff continued to work a full time schedule until September 1998 when Agency management withdrew all accommodations, including flexible work schedule and telecommuting.   [9/3/98 ltr of Carson Eoyang; 9/3/98, memo re work schedule; 9/10/98, Woodruff response to telecommuting; 9/11/98, ltr to Tate; 11/98 email re telecommuting, 11/17/98 Memo re denial of accommodations; 12/22/98, memo to Tate re Failure to Accommodate]  Because of the removal of accommodations and the effect on his health, of being forced to work without accommodations, Mr. Woodruff's health deteriorated to the point where his physicians placed him on total disability.  As a result of the Agency's abrupt and complete removal of all accommodations for disability, which had been requested by Mr. Woodruff and his physicians, he was forced to use his sick leave and annual leave, to prevent termination or adverse personnel action, while LWOP was being reestablished.  The U.S. Department of Labor/OWCP subsequently ruled in favor of Mr. Woodruff and granted total disability retroactive to September 3, 1998 due to the Agency's unlawful and inappropriate denial of accommodations.

On January 5, 1999, Mr. Woodruff was involved in a serious car accident while returning home from his office at FAA Headquarters.  This resulted in extended hospitalization, additional surgery and rehabilitation.  While recovering, he was threatened with termination; forced to return to work, while totally disabled, being transported into the FAA Headquarters building and transferred to his office in a

wheelchair, without any accommodations for his disability. Further, he was denied access to the Agency health facility; denied sick leave; denied annual leave and subjected to time and attendance and payroll errors, adverse personnel actions and a hostile work environment among other matters. Since 1998 to the present, no requested accommodations have been provided. A conference with OWCP on July 17, 2000 confirms that Mr. Woodruff was entitled to LWOP because the Agency withdrew/terminated his accommodations.

Mr. Woodruff's subsequent requests for leave restoration and buy back have repeatedly been denied by the Agency.

Mr. Woodruff's physicians, as well as Agency selected physicians, and OWCP physicians have determined that the injuries sustained in the automobile accident, while contributing to the his disability, are not the principal factors limiting Mr. Woodruff's return to work. The on-the-job injuries are clearly documented as the direct cause of the disabilities along with the withdrawal of the accommodations and being forced to work without accommodations on a continuing basis. [8/99, email re Doctors statement; Dr. Meleka ltr to Dr. Poole – 8/12/99; July 2003 Dr. McFarland letter]

Mr. Woodruff has been damaged physically by the acts of the agency. This is clearly documented in the medical records. He has lost pay, benefits, status, promotional opportunity and much more. While the agency tries to explain this away by saying that Mr. Woodruff has been kept in the same position and grade and pay while on LWOP status, the facts show otherwise. [Woodruff Declaration – 7/26/04]

The agency failed to respond to the District Court Judge's requirement that they submit, to the appellant, a settlement offer including seven (7) specific areas to be

addressed.  The agency offered only a lower paying, non-management position without any accommodations, which they knew Mr. Woodruff could not accept.  This offer also included false retirement data and was designed in such a fashion that it potentially could result in causing the loss of Mr. Woodruff's workers' compensation benefits, and force into retirement with reduced pension and benefits.

<u>SUMMARY OF ARGUMENT</u>

This case is about a senior federal management employee with over 25 years, who had an on-the-job injury in 1995 and became disabled due to the actions of a newly appointed supervisor who refused to provide Mr. Woodruff with accommodations which had been in place but which this supervisor removed. It is a case of severe disability discrimination and reprisal, so severe that it injured Phillip Woodruff's health to the point he could no longer work in a career that he loved. An outstanding employee, who until he was injured, was a Division Manager with the FAA, Department of Transportation, a Congressional Fellow with United States Senator John Glenn, in addition to other responsibilities with aviation education. Who through the acts of his supervisor, Carson Eoyang, and other FAA officials, and continuing reprisal as a result of filing EEO complaints, was prevented from returning to his position as Division Manager. Through this appeal, Mr. Woodruff seeks the right to bring his case before the jury and asks this court to reverse the District's Court dismissal of his complaint.

Mr. Woodruff was injured in an on-the-job injury in 1995. In 1997 he underwent surgery for this injury. He returned to full-time work in early 1998. At that time his supervisor refused to allow Mr. Woodruff to return to his position as Division Manager. As a result of this action, Mr. Woodruff filed an EEO complaint. Following this complaint, his supervisor, as well as other FAA officials continued reprisal and eventual discontinuation of his accommodations required for his health and recovery. Mr. Woodruff filed another EEO Complaint in July 1998. Reprisal continued and as a result of continuing actions by his supervisor and FAA officials, Mr. Woodruff's health deteriorated to the point of total disability as confirmed by his physicians and OWCP,

14

and as a result he went on OWCP and LWOP. This discrimination was also accepted by the District Court

The District Court has ruled that Mr. Woodruff did not exhaust his administrative remedies by failing to timely file an EEO Complaint by April 30, 1998. The Court however, in a motion to dismiss, ruled that the cause of action was to begin on July 10, 1998, not April 30, 1998. Mr. Woodruff filed his other EEO complaint in August 1998, clearly within the time allotted by law to file his complaint. The Court therefore has erred in using the April 30, 1998 date as the date for Mr. Woodruff to exhaust his administrative remedies. Clearly discrimination and reprisal occurred in July 1998 and following and Mr. Woodruff contacted the EEO counselor within the 45-day period required by law.

Mr. Woodruff has a right to a jury trial as there are in fact genuine issues of material fact left unresolved. It is up to the jury to decide these issues. It is also the jury's role as the fact finder to weigh the credibility of the evidence and the witnesses to draw legitimate inferences from the facts. If a reasonable fact finder could infer discrimination based on the evidence submitted, then summary judgment is inappropriate.

<u>ARGUMENT</u>

THE COURT SHOULD REVERSE THE RULING AS THE
DISTRICT COURT ERRED IN DISMISSING PHILLIP WOODRUFF'S
COMPLAINT FOR FAILING TO EXHAUST HIS ADMINISTRATIVE
REMEDIES.

This Court should find that Phillip Woodruff fully and completely exhausted his

administrative remedies as required by law. Pursuant the court's decision of August 7,

2002, only claims about the defendant's actions in July 1998 could proceed.  The agency

and the court however, used the date of April 30, 1998 for the beginning date for the

discrimination complaint.

Mr. Woodruff sought counseling and filed his EEO complaint well within the 45

day time period, in August 1998.  Therefore to state that Mr. Woodruff did not fully and

completely exhaust his administrative remedies is false.

The trial court erred in finding that "nine months is too much time between an

adverse action and protected activity to establish causation."  As the discrimination

occurred on July 10, 1998, Mr. Woodruff clearly contacted an EEO counselor well within

the 45-day period, that being August 1998.

Before filing a complaint of discrimination, EEO regulations require an aggrieved

federal employee to "initiate contact with" an agency EEO counselor within 45 days of

the effective date of the alleged discriminatory action. 29 C.F.R.

§1614.105(a)(1)(emphasis added.)  The requirement to initiate contact is to provide the

agency with an opportunity to attempt informal resolution of the issues involved.  *Nygren*

*v. Ashcroft*, 109 Fed. App. 816 (2004). The regulation does not define "initiate contact."

*Bailey v. United States Postal Service*, 208 F. 3d 652, 654 (2000)  However, the EEO has

issued a number of decisions that interpret "initiate contact" to require that the employee

16

"contact the agency official logically connected to the EEO process and exhibit an interest to begin the EEO process." *Allen v. Runyon,* Doc No. 595093 (1996) WL 391224 at *3 (EEOC July 8, 1996). *Pauling v. Secretary of the Dept. of the Interior*, 960 F. Supp. 793, 803 (1997). The record clearly shows that Mr. Woodruff contacted an agency official regarding the discrimination and continuing discrimination and refusal to accommodate Mr. Woodruff's disability. *(Plaintiff's Opposition to Defendant's Motion for Summary Judgment at 2-3, Exhibits 13, 15, 20, 50-54.)* Mr. Woodruff contacted a counselor in August 1998, well within the 45-day window, and he was also in constant contact with an EEO counselor as his pending claim against Mr. Eoyang and other FAA officials was in the active discovery and mediation stage during the time period at issue. Eoyang was the Agency's mediation official.

Mr. Woodruff's continuing violation argument should prevail where there is evidence that he had an active and ongoing dialogue with the EEO officer during the period in question. *Cf. Schrader v. Tomlinson,* 311 F. Supp. 2d 21, 27 (2004)(where plaintiff's continuing violation theory failed because she did not initiate contact with the EEO counselor until two years after she had knowledge that her male co-workers had received preferential treatment over her.) Mr. Woodruff was in constant contact with the EEO office.

"If officials having knowledge of protected disclosures by federal employee, and even slight involvement in them, are in charge of advising or effectuating removal...this may justify interference of retaliatory motive sufficient for test to determine whether retaliation resulted...so that the trier of fact can make informed and reasoned

determination of whether "nexus" exists between retaliation and employee's removal." *Warren v. Department of the Army*, 804 F.2d 654.

This evidence is sufficient to raise a material issue of fact for jury consideration.

## ARGUMENT

### THE COURT HAS DETERMINED THAT DISABILITY DISCRIMINATION DID IN FACT OCCUR. THE DISTRICT COURT ERRED IN NOT ALLOWING MR. WOODRUFF THE BENEFIT OF A JURY TRIAL

First it should be clearly understood by all parties that the District Court determined in this case that *"the Plaintiff states actionable, adverse personnel actions for changes in his job responsibilities and commuting arrangements."* In summary the Court states, "The Plaintiff's claims regarding loss of managerial authority, inability to return to the same level of authority and responsibility, and denied commuting arrangements (*i.e,* the alleged of lack of "disability accommodations") are not a mere inconvenience or minor alteration of job responsibilities. *Crady*, 933 F.2d at 136 (noting that a "materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation."). Indeed, as indicated above, courts recognize that the significant diminution of material responsibilities can construe an adverse personnel action, as can a change in commuting arrangements that prevents an employee from properly performing his employment obligations. *Kocsis*, 97 F.3d at 886; *Grande*, 83 F. Supp. 2d at 563."

The Agency clearly prevented Mr. Woodruff from performing his employment obligations, and thus created his total disability.

18

*Disability Discrimination*

Mr. Woodruff's medical condition is as follows: (a). His medical condition is as follows and is reported in his medical records previously submitted: chronic pain, myofascial pain syndrome, partial paralysis, bone transplants, orthopaedic hardware and metal implants, fibromyalgia, lumbar spondylosis, post-surgical pain, sleep apnea. (b). The agency has been well advised of Mr. Woodruff's condition through his Johns Hopkins Physicians medical reports, DOL and OWCP. (c). Mr. Woodruff meets the criteria of a disabled person under 29 CFR § 1630.2(g), (1), (2) and (3). Mr. Woodruff has an impairment and a long standing record of the impairment. Mr. Woodruff has a physical impairment that substantially limits one or more major life activity that includes breathing (sleep apnea); walking (chronic pain, myofascial pain syndrome, fibromyalgia, partial paralysis). (d). Mr. Woodruff has been regarded by his physicians and the Agency as having these impairments.

The Agency not only took the management duties from Mr. Woodruff's position and withdrew accommodations it also forced Mr. Woodruff to work while on total disability—being denied sick and annual leave—these are facts in the record!

The Agency's statement that Mr. Woodruff cannot return to work and perform his duties directly related to his disability. The Agency explicitly based its action on his disability, thus presenting direct evidence of discrimination, and did not assert any independent, nondiscriminatory reason for the action. *Clark v. U.S. Postal Service,* MSPB Docket No. NY-0752-95-0155-1-1.

As in *National Treasury Employees Union v. IRS,* 101FLRR 2-1189, The law is "a "qualified handicapped person" under the Act is an individual who, with or without

reasonable accommodations, can perform the essential duties of the position in question without endangering the health and safety of him/herself or others." 1614.203(a)(6). The Agency's law is no telecommuting, maybe a flexible work schedule, and demand to return to work immediately.

The crucial point in interpreting the "qualified" individual in this case is whether the fact that the Agency's withdrawal and denial of accommodations--from an otherwise qualified individual--can enable the Agency to then deem the individual "non-qualified." In other words the Agency *creates* the non-qualified individual by withholding accommodations unlawfully.

It is clear from the opinion of the U.S. District Court and rulings from the OWCP, that Mr. Woodruff has been denied disability accommodations, while a fully qualified employee. The Agency continued to demonstrate a pattern of activity to terminate Mr. Woodruff from his position and to deny his accommodations for his disability. Mr. Woodruff and his physicians continued to ask for accommodations. The Agency never stated if these accommodations were unreasonable. A key issue here is that the Agency has *never* offered Mr. Woodruff *any* of the reasonable accommodations requested. In fact, the Agency has repeatedly denied accommodations and withdrawn accommodations that were in place, while he was in fact a qualified employee. These acts by the Agency *have made the Agency responsible for the Mr. Woodruff's continuing disability and inability to return to work.* This denial has not only damaged Mr. Woodruff's health, but has also damaged his income, promotional opportunities, benefits, status, retirement, and TSP, etc. This is permanent and irrevocable damage.

Moreover, the record shows that the Agency not only denies reasonable accommodations requested by Mr. Woodruff and his physicians, but also it further confirms that the numerous physicians concur that Mr. Woodruff being forced to work without these accommodations has contributed to his current disability.

In addition, "[o]ne who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm." Restatement (Second) of Torts §46 (1965); *Metropolitan Life Insurance Co. v. McCarson*, 467 so. 2d 277, 278-279 (1985)

Clearly Mr. Woodruff was subject to emotional distress and bodily harm. This was confirmed by his medical records and through OWCP. The Agency's removal of accommodations and failure to accommodate Mr. Woodruff at his request and the request of his physicians clearly caused him to be totally disabled.

The Agency has never offered accommodations since they were withdrawn in 1998.

Before Carson Eoyang was hired by the FAA, Mr. Woodruff's supervisors, including Dr. James Boone, and others, all provided Mr. Woodruff accommodations and allowed full management responsibilities and duties. Once Carson Eoyang decided to retain Mr. Woodruff's position for himself, the accommodations were withdrawn.

### Disparate Treatment

Mr. Woodruff has already shown that he is a member of a protected group in that he has a disability within the meaning of 29 CFR § 1630.2(g)(1), (2) and (3).

It is well known and documented, and in fact recently, that in general the Agency is promoting telecommuting and the flexible work schedule arrangement for its employees. These people are afforded the ability to work a flexible work schedule with telecommuting that was not afforded to Mr. Woodruff when he was a qualified or non-qualified employee. These accommodations were started by the Agency and continue to be promoted today and in fact encouraged. It is shown that this produces a better work environment and work experience for all involved.

Mr. Woodruff was treated more harshly as he was denied flexible work schedule and telecommuting accommodations.

<em>Disparate Impact</em>

Mr. Woodruff lists his denial of flexible work schedule; denial of telecommuting; denial of LWOP extension; denial of return to duties; denial of status, benefits and pay.

Mr. Woodruff notes the prohibited personnel practices and job retention rights and re-employment rights following his on-the-job injury. He also notes the FECA laws and OPM orders. Mr. Woodruff challenges the denial of LWOP extension, denial of flexible work schedule and telecommuting.

Mr. Woodruff was denied return to his position without return to duty, when he returned to work within one year. His accommodations were withdrawn and denied. His pay, leave and benefits were denied. LWOP was not extended. His authority, staff position duties were reduced. And he has been advised that he would not be returned to his GM-15 position. There has been no offer of return to duty with accommodations. Mr. Woodruff has been forced to file for retirement and has suffered loss of pay, benefits, and status, as well as incurred costs and other damages.

Had the accommodations of flexible work schedule and telecommuting not been withdrawn, Mr. Woodruff would have been able to continue to work. Due to the Agency's actions it may never be possible for Mr. Woodruff to return to work. Certainly he has lost a great deal in terms of health, income and many other measures. This will continue.

The purpose of LWOP for Federal Employees injured on the job is to protect the status and benefits until they are qualified to return to duty. The Agency demanded an immediate return to work that is against the FECA regulations. The Agency demanded Mr. Woodruff return to work immediately however, no accommodations were available for him. The purpose of the FECA law is for the protection of the Federal worker. This is in the interest of the Federal Service as well--to uphold the law for the benefit of the families of the disabled Federal workers--the Federal worker injured on the job--the Federal worker who is denied his or her job in clear violation of Federal Law, and denied reasonable benefits and ultimately removed from his position and terminated--forced to retire, lose status and benefits, and risk loss of all benefits. It is in the best interest of the Federal Service to support the aims and goals of the laws and regulations governing fair and equal employment opportunities for all. The Agency has not done this.

Clearly there is a pattern of pretext by the Agency to terminate Mr. Woodruff and prevent him from returning to duty.

ARGUMENT

THE DISTRICT COURT ERRED IN FINDING INSUFFICIENT EVIDENCE
OF RETALIATION AS A MATTER OF LAW.

To prove a prima facie case of retaliation, Mr. Woodruff must show that he (1) engaged in statutorily protected activity; (2) that the Agency took an adverse personnel

23

action; and (3) a causal connection existed between the protected activity and the adverse personnel action. *Brown v. Brody*, 199 F.3d 452-453 (citing *Mitchell v. Baldridge*, 759 F2d 80, 86 (1985), and *Cones v. Shalala*, 199 F. 3d 512, 520 (2000), *Childers v. Slater*, 44 F. Supp. 2d 8, 18 (1999). Mr. Woodruff has already proven the first two tests. The District Court erred however in finding no causal connection between Mr. Woodruff's protected activity and the adverse personnel action as a matter of law.

The fact that Mr. Woodruff filed his prior EEO claim in 1997 does not *as a matter of law* negate the impact of the ongoing investigation of that claim, including taking depositions, the informal and formal mediation and Mr. Woodruff's request for a hearing. In addition, discrimination occurred on July 10, 1998 and Mr. Woodruff timely filed a complaint with the EEO in that matter.

Under Title VII, the continuing violations doctrine generally rests on the assumption that if an alleged discrimination is part of a "continuing pattern of discrimination" the plaintiff should be allowed to bring the claim based on the entire pattern of conduct, not just those acts occurring within the filing period. Mr. Woodruff has already proven that discrimination occurred, and that this discrimination was ongoing in nature. Mr. Woodruff clearly was in contact with an EEO counselor during this period of time and he timely filed a complaint in August 1998.

The trier of fact will be able to draw a reasonable inference that the ongoing investigation played a role in the adverse actions taken against Mr. Woodruff. A grant of summary judgment was not appropriate. *Anderson v. Liberty Lobby,* 477 U.S. at 255, *Hill v. Lockheed Martin*, 354 F.3d at 283.

<u>ARGUMENT</u>

THE DISTRICT COURT FAILED TO ADDRESS THE RETALIATION
CLAIM ADDED IN THE SECOND AMENDED COMPLAINT

Subsequent to filing the civil action on appeal here, in 2001, other management officials affected further erosion of Mr. Woodruff's duties and responsibilities by transferring administrative and oversight of aviation programs from Mr. Woodruff. Mr. Woodruff filed a third EEO complaint with the EEO counselor alleging further retaliation. This complaint went through the administrative process to the hearing stage. However, more than 180 days passed without a final agency decision. Therefore the retaliation claim was added to this matter upon the filing of the Second Amended Complaint.

The District Court did not address the retaliation claim arising from the 2001 actions.

<u>CONCLUSION</u>

Forcing a totally disabled federal worker to work against his doctors' orders is against the law. To do so without providing any accommodations whatsoever for his disabilities, and further denying him his use of sick leave or annual leave, denying him access to medical facilities and treatment readily available in the agency headquarter's building and further subjecting him to a hostile work environment, reducing his duties, pay and benefit, forcing him to become permanently disabled is outrageous. Continuing to deny accommodations and reinstatement to his position until he is forced to file for retirement by any standard constitutes abusive conduct and the Appellant is entitled to substantial damages as a result.

Mr. Woodruff, a long time, distinguished federal employee, was injured in an on the job accident. The District Court found that disability discrimination existed, yet denied a trial based on inaccurate assumptions and technicalities. Without full exploration of the record the entire case was dismissed. Consequently, the continuing Agency actions and reprisal actions have caused further medical complications and continued total and permanent disability. The well resourced Agency seeks to avoid remedy and settlement. The only relief available to Mr. Woodruff is by a jury. Yet the District Court dismissed case with prejudice on the pleadings where genuine issues of material fact exist.

This is a case that has merit. It is the jury's role as the fact finder to weigh the credibility of the evidence and the witnesses and to draw legitimate inferences from the facts. *Albritton v. Kantor*, 944 F. Supp, 970. If a reasonable fact finder could infer discrimination based on the evidence submitted, then summary judgment is inappropriate.

Mr. Woodruff has been denied even his day in court.  Mr. Woodruff respectfully requests this Court to reverse the District Court's decision and remand this case for trial on the merits.

Respectfully submitted,

Phillip S. Woodruff
10812 Brookwood Avenue
Upper Marlboro, Maryland  20772
(301) 868-9383
*Appellant*

<u>CERTIFCATE OF SERVICE</u>

I HEREBY CERTIFY that the foregoing Appellant's Initial Brief was sent via

priority mail, postage prepaid to the following attorney(s) of record:

Kenneth L. Wainstein, U.S. Attorney
Craig Lawrence, Assistant United States Attorney
Peter Smith, Assistant United States Attorney
Judiciary Center Building
555 Fourth Street, N.W., Room 10-114
Washington, D.C.  20530


*1/3/2006*
(Date)

Phillip S. Woodruff
Appellant

28