UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| Phillip S. Woodruff, | ) | |
| Plaintiff, | ) | |
| v. | ) | Civil Action No. 05-2071 (PLF) |
| | ) | |
| U.S. Department of Transportation | ) | |
| Federal Aviation Administration, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT OR, IN THE ALTERNATIVE FOR SUMMARY JUDGMENT

Defendants United States Department of Transportation and the Federal Aviation Administration respectfully move the Court, pursuant to Rules 12 (b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, for an order dismissing all of Plaintiff's claims in this action on the grounds that Plaintiff has failed to set forth a short and plain statement of his claims, that the Court lacks subject-matter jurisdiction over certain of Plaintiff's claims, and that certain of Plaintiff's claims fail to state a claim upon which relief may be granted. In the alternative, the Court should grant Defendants summary judgment on Plaintiff's claims because there is no genuine issue of material fact in dispute and Defendants are entitled to judgment as a matter of law.

In support of this Motion, Defendants submit the attached memorandum of points and authorities and a proposed order. Pro se Plaintiff should note that the assertions contained in the accompanying declarations and other attachments in support of Defendants' motion will be accepted by the Court as true unless Plaintiff submits his own affidavit or other documentary

evidence contradicting Defendant's declarations and attachments.[1]

Respectfully submitted,

_____/s/_____
KENNETH L. WAINSTEIN, D.C. BAR # 451058
United States Attorney

_____/s/_____
RUDOLPH CONTRERAS, D.C. BAR #  434122
Assistant United States Attorney

_____/s/_____
PETER S. SMITH, D.C. BAR # 465131
Assistant United States Attorney
United States Attorney's Office
Civil Division
555 4th Street, N.W.
Washington, D.C. 20530
(202) 307-0372

---

[1] Any factual assertions contained in documents in support of this Motion must be accepted by the Court as true unless Plaintiff submits his own affidavit or other competent evidence contradicting the assertions in the documents. See Neal v. Kelly, 963 F.2d 453, 456-57 (D.C. Cir. 1992); Local Rules 7(h) and 56.1; and Fed. R. Civ. P. 56(e), which provides as follows:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.  If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 56(e).

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Phillip S. Woodruff,                ) | |
|            Plaintiff,    ) | |
|       v.              ) | Civil Action No. 05-2071 (PLF) |
|                         ) | |
| U.S. Department of Transportation   ) | |
| Federal Aviation Administration,     ) | |
|                         ) | |
|           Defendants.   ) | |
| _____ ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT OR, IN THE
ALTERNATIVE FOR SUMMARY JUDGMENT**

Pro se Plaintiff Phillip Woodruff's Amended Complaint states that it is brought pursuant

to Title VII of the Civil Rights Act, 42 U.S.C. § 2000e-16. See, e.g., Am. Compl. at 2, ¶ 1.

Plaintiff complains of "actions taken against [him] in April 2004." Id. As an initial matter,

Plaintiff's Amended Complaint should be dismissed because Plaintiff has failed to name the

proper defendant for a claim under Title VII. 42 U.S.C. § 2000e-16(c) (providing that in a "civil

action the head of the department, agency, or unit, as appropriate, shall be the defendant"). In

addition, for the reasons set forth in this memorandum, the Court, pursuant to Rules 12 (b)(1) and

12(b)(6) of the Federal Rules of Civil Procedure, should dismiss Plaintiff's Amended Complaint

because he has failed to set forth a short and plain statement of his claims, because the Court

lacks subject-matter jurisdiction over certain of Plaintiff's claims, and because certain of

Plaintiff's claims fail to state a claim upon which relief may be granted. In the alternative, the

Court should grant Defendants summary judgment on Plaintiff's claims because there is no

genuine issue of material fact in dispute and Defendants are entitled to judgment as a matter of

law.

## I.    **FACTUAL AND PROCEDURAL BACKGROUND**

On or about September 29, 1995, Plaintiff suffered a workplace injury.  Am Compl. at 1; Ex. 17, <u>Woodruff v. Mineta</u>, Civil No. 01-1964 (RMU),[2] Memo. Opin. at 2; Ex. 18, Appellant Phillip S. Woodruff's Final Brief in Appeal No. 05-5033 at 6.  In addition, Plaintiff was injured on January 5, 1999, in a "serious car accident."  Ex. 18, Final Brief in Appeal No. 05-5033 at 11. In a June 17, 2004 letter to Congressional Representative Steny Hoyer, Plaintiff states that "My physicians at Johns Hopkins in Baltimore continue to certify my total disability.  OWCP accepts this."  Ex. 14 attached at 2.  Thus, Plaintiff's current status is total disability and Plaintiff does not currently report to work at FAA.  Ex. 5 attached, Pl. Affidavit at 4 ("I am generally confined to my home and am on OWCP total disability status.").  <u>See also</u> Ex. 15 attached, FAA's July 19, 2004 letter to the Honorable Barbara A. Mikulski.  Plaintiff has been in that status since approximately August, 2000.   Declaration of Julie Berko at 3.  In fact, Plaintiff cannot work in any job whatsoever.  Pl. Aff. at 4 ("I am not able to work at any job at this time.").

Defendants moved to dismiss Plaintiff's Complaint or, in the alternative for a more definite statement in this case.  On March 6, 2006, the Court issued an order granting in part and denying in part Defendants' motion.  The Court ordered Plaintiff to file an amended complaint "setting forth, in numbered paragraphs . . . the statutory basis for plaintiff's claim or claims . . . [and his] efforts to avail himself of administrative remedies for his alleged injury, and the outcome of those efforts."  March 3, 2006 Order at 1-2.  In response, Plaintiff filed an Amended

---

[2] Exhibit references are to the exhibits filed with Defendant's Memorandum of Points and Authorities in Support of Motion for Summary Judgment.  References to Plaintiff's Amended Complaint in this case are to page numbers unless otherwise indicated, because Plaintiff's Amended Complaint generally lacks paragraph numbering.

Complaint.  However, Plaintiff's Amended Complaint fails to comply with the Court's order.

Plaintiff's Amended Complaint alleges a myriad of vague and conclusory allegations, some or all

of which appear to have been raised in other lawsuits currently pending in this district or before

the United States Court of Appeals for the District of Columbia Circuit.  For example, Plaintiff

complains of "a continuing pattern of discrimination" including being "denied accommodations

for his disability."  Am. Compl. at 2, ¶ 1.

Plaintiff's Second Amended Complaint in Woodruff v. Mineta, Case No. 01-CV-1964

(RMU), alleges that FAA "Downgrad[ed] Plaintiff's position in an attempt to reduce his grade,"

and "revok[ed] the disability accommodations previously granted to Plaintiff."  Sec. Am. Compl.

at ¶ 12.  The Honorable Ricardo M. Urbina's Memorandum Opinion in that case states that Mr.

Woodruff claims that "the FAA discriminated against him based on his age, gender, race,

disability, and in retaliation for protected activity."  Ex. 17, Memo. Op. at 1.  Plaintiff appealed

Judge Urbina's decision.  In the appeal of that case, Appeal No. 05-5033, Mr. Woodruff's Final

Brief states that the issues include "a series of events that worked to divest Mr. Woodruff of his

substantive professional duties, to remove his reasonable accommodations for his disability, and

to retaliate against him . . . ."  Ex. 18 attached, Final Br. at 8.  Mr. Woodruff's Final Brief also

states, at 11-12, that Plaintiff "was threatened with termination; forced to return to work, while

totally disabled . . . without any accommodations for his disability.  Further, he was denied access

to the Agency health facility; denied sick leave; denied annual leave and subjected to time and

attendance and payroll errors; adverse personnel actions and a hostile work environment among

other matters."  Ex. 18.  Mr. Woodruff also claims in his appeal, see Final Brief at 20, that the

FAA "continued to demonstrate a pattern of activity to terminate Mr. Woodruff from his position

and to deny his accommodations for his disability." Ex. 18.

In a more recent civil action before Judge Urbina, <u>Woodruff v. USDOT and FAA</u>, Civil No. 05-1367 (RMU), Plaintiff alleges that "Workers' Compensation and Leave Without Pay (LWOP) was authorized [sic] during this period and following but was denied [sic] by the agency requiring Plaintiff to use sick leave and annual leave . . . ." Ex. 19 attached, Compl., Civil No. 05-1367 (RMU) at ¶ 5. In that case, Mr. Woodruff also complains that Defendants "fraudulently submitted incorrect payroll data into the system creating overpayments, underpayments, leave errors, tax errors, TSP and other incorrect and damaging information . . . ." Ex. 19, Compl., Civil No. 05-1367 (RMU) at ¶ 5.

Here, Plaintiff alleges that his purported April 20, 2004 receipt of certain paperwork from the agency human resources staff constitutes a "new" claim separate and apart from his various other lawsuits. Am. Compl. at 2, ¶ 1. Plaintiff simply misunderstands the paperwork he received. The alleged April 20, 2004 actions reflect Plaintiff's 2003 salary of record. Shortly thereafter, Plaintiff received paperwork implementing the 2004 federal pay raise and locality pay, retroactive to the first pay period of the year. Thus, Plaintiff's salary actually increased. As the FAA explained in response to an inquiry about this issue from the Honorable Barbara A. Mikulski, "Mr. Woodruff alleges that his salary was reduced from $119,267 to $116,768 . . . . [however, a] pay adjustment SF-50 action (effective 01/11/04) shows Mr. Woodruff's salary at $121,954, which includes the retroactive March 2004 pay adjustment and locality pay." Ex. 15, FAA's July 19, 2004 letter to the Honorable Barbara A. Mikulski.

II.    **LEGAL STANDARDS OF REVIEW.**

    A.    **Standard of Review for Motion to Dismiss.**

    Defendant moves to dismiss Plaintiffs' Amended Complaint under Rules 12(b)(1) and

12(b)(6) of the Federal Rules of Civil Procedure.  Requests for dismissal for lack of jurisdiction

over the subject matter pursuant to 12(b)(1) and failure to state a claim pursuant to 12(b)(6)

require somewhat different standards of review.  "In reviewing a motion to dismiss for lack of

subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), the court must accept

the complaint's well-pled factual allegations as true and draw all reasonable inferences in the

plaintiff's favor."  Thompson v. Capitol Police Board, 120 F. Supp. 2d 78, 81 (D.D.C. 2000)

(citations omitted).  "The court is not required, however, to accept inferences unsupported by the

facts alleged or legal conclusions that are cast as factual allegations."  Rann v. Chao, Dep't. of

Labor, 154 F. Supp. 2d 61, 64 (D.D.C. 2001) (citations omitted), affirmed, 346 F.3d 192 (D.C.

Cir. 2003), cert. denied, 125 S. Ct. 35 (2004).  In addition, "[o]n a motion to dismiss pursuant to

Rule 12(b)(1), the plaintiff bears the burden of persuasion to establish subject-matter jurisdiction

by a preponderance of the evidence."  Thompson, 120 F. Supp. at 81.  A court may resolve a

motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) in two ways.  First,

the court may determine the motion based solely on the complaint. Herbert v. National Academy

of Science, 974 F.2d 192, 197 (D.C. Cir. 1992).  Alternatively, to determine the existence of

jurisdiction, a court may look beyond the allegations of the complaint, consider affidavits and

other extrinsic information, and ultimately weigh the conflicting evidence.  See id.  In connection

with this rule, Defendant has submitted herewith materials from Plaintiff's other cases.

    Similarly, a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6)

may be granted if it is beyond doubt that a plaintiff can demonstrate no set of facts that supports

her claim for relief.  See Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Sparrow v. United Air

Lines, Inc., 216 F.3d 1111, 1117 (D.C. Cir. 2000).  The Court is to treat the Amended

Complaint's factual allegations as true, see Leatherman v. Tarrant County Narcotics Intelligence

and Coordination Unit, 507 U.S. 163, 164 (1993), and must grant Plaintiff "the benefit of all

inferences that can be derived from the facts alleged," Schuler v. United States, 617 F.2d 605,

608 (D.C. Cir. 1979).  However, "the Court need not accept inferences drawn by the plaintiff if

those inferences are unsupported by the facts alleged in the complaint, nor must the Court accept

the plaintiff's legal conclusions."  Akintomide v. United States, 99-MS-0055 (PLF), 2000 WL

1693739, at *1 (D.D.C. Oct. 31, 2000) (citing National Treasury Employees Union v. United

States, 101 F.3d 1423, 1430 (D.C. Cir. 1996); Kowal v. MCI Communication Corp., 16 F.3d

1271, 1276 (D.C. Cir. 1994)).

    While a complaint filed by a pro se litigant such as Mr. Woodruff is held to a less

stringent standard than a pleading drafted by a lawyer, pro se litigants still must comply with the

Federal Rules of Civil Procedure.  United States v. Funds from Prudential Securities, 362

F.Supp.2d 75, 82 (D.D.C. 2005) (citing Jarrell v. Tisch, 656 F.Supp. 237, 239 (D.D.C. 1987),

which was cited with approval in Moore v. USAID, 994 F.2d 874, 876 (D.C. Cir. 1993)).

Applying these various legal standards demonstrates that Plaintiff's Amended Complaint should

be dismissed.

### B.    Standard for Summary Judgment.

    Under Fed. R. Civ. P. 56(c), summary judgment is appropriate when the record shows

that there is no genuine issue as to any material fact and that the moving party is entitled to

judgment as a matter of law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986);

Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio

Corp., 475 U.S. 574, 587 (1986).

      In determining whether there exists a genuine issue of material fact, the Court must view

all facts, and reasonable inferences to be drawn from them, in a light most favorable to the non-

moving party.  Anderson, 477 U.S. at 255.  If the evidence favoring the non-moving party is

"merely colorable, or is not significantly probative, summary judgment may be granted."  Id. at

249-50.  Indeed, in order to withstand summary judgment, the non-moving party may not rest

solely upon allegations or denials.  Id. at 248.  The mere existence of some factual dispute is

insufficient to withstand summary judgment; there must be a genuine issue of material fact.  Id.

at 247-48.  There is no genuine issue of material fact if the relevant evidence of record, taken as a

whole, indicates that a reasonable factfinder could not return a verdict for the party opposing

summary judgment.  Id. at 248.  If the submitted evidence is of such a character that it would not

permit a reasonable fact finder to find in favor of the non-moving party, summary judgment is

appropriate.  Id. at 251.

      Rule 56 does not require the moving party to negate the non-movant's claim or to show

the absence of a genuine issue of material fact.  Celotex, 477 U.S. at 323.  Rather, when the

movant files a properly-supported summary judgment motion, the burden shifts to the

nonmoving party to show "specific facts showing that there is a genuine issue for trial."  Fed. R.

Civ. P. 56(e).  The non-movant cannot manufacture genuine issues of material fact with "some

metaphysical doubt as to the material facts," Matsushita Elec. Indus. Co., 475 U.S. at 586, or

with "conclusory allegations," "unsubstantiated assertions,""or by only a 'scintilla' of evidence."

Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994).

Before turning to the merits, a brief word is in order concerning the scope of review in employment discrimination cases. Though Mr. Woodruff might wish it otherwise, the employment discrimination statutes do not transform federal courts into review boards for local employment decisions. "Title VII, it bears repeating, does not authorize a federal court to become 'a super-personnel department that reexamines an entity's business decisions.'" Barbour v. Browner, 181 F.3d 1342, 1346 (D.C. Cir. 1999) (quoting Dale v. Chicago Tribune Co., 797 F.2d 458, 464 (7th Cir. 1986)). To the contrary, a court "may not 'second-guess an employer's personnel decision absent demonstrably discriminatory motive.'" Fischbach v. District of Columbia Dep't of Corrections, 86 F.3d 1180, 1183 (D.C. Cir. 1996) (quoting Milton v. Weinberger, 696 F.2d 94, 100 (D.C. Cir. 1982)).

Where, as here, a plaintiff offers no direct evidence of discrimination, employment discrimination claims are governed by the familiar framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 803-805 (1973). Under this test, Mr. Woodruff has the initial burden of proving by a preponderance of the evidence a prima facie case of discrimination. Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 252-53 (1981). If Plaintiff is able to establish a prima facie case, then given Defendant's legitimate, nondiscriminatory reason, he must present evidence that the stated reason merely was a pretext for discrimination. Id. Of course, at all times, Plaintiff retains the ultimate burden of persuasion to demonstrate that he was in fact the victim of intentional discrimination. Burdine, 450 U.S. at 252-53. In this context, in Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 148 (2000), Justice O'Connor recognized occasions where summary judgment would be appropriate:

8

> Certainly there will be instances where, although the plaintiff has
> established a <u>prima facie</u> case and set forth sufficient evidence to
> reject the defendant's explanation, no rational fact finder could
> conclude that the action was discriminatory.  For instance, an
> employer would be entitled to judgment as a matter of law if the
> record conclusively revealed some other, nondiscriminatory reason
> for the employer's decision, or if the plaintiff created only a weak
> issue of fact as to whether the employer's reason was untrue
> and there was abundant and uncontroverted independent evidence
> that no discrimination had occurred.

This case is one of those instances.

## III.    ARGUMENT.

### A.    <u>Most of Plaintiff's Claims Should Be Dismissed Because Plaintiff Failed to Exhaust his Administrative Remedies.</u>

Defendants are hampered in making an exhaustion argument in light of the vague nature of the Amended Complaint.  Due to the Amended Complaint's failure to set forth plainly the claims asserted, Defendants reserve any applicable exhaustion arguments not made in this Motion.  To the extent Plaintiff is advancing Title VII claims, he must have filed a timely administrative claim with the employing agency and exhausted his administrative remedies before filing a civil action.  <u>Brown v. General Services Administration</u>, 425 U.S. 820, 832-33 (1976); <u>see also</u> <u>Jarrell v. United States Postal Service</u>, 753 F. 2d 1088, 1091 (D.C. Cir. 1985) (a timely administrative charge is a prerequisite to initiation of a Title VII action in District Court); <u>McKenzie v. Sawyer</u>, 684 F. 2d 62, 72 (D.C. Cir. 1982) (a crucial feature of the plaintiff's case is a showing that the alleged Title VII charge is timely); <u>Cones v. Shalala</u>, 945 F.Supp. 342, 348 (D.D.C. 1996) (failure to pursue administrative claims bars subsequent federal court action).  <u>See also</u> <u>Nat'l R.R. Passenger Corp. v. Morgan</u>, 536 U.S. 101, 110 & 122 (2002).  Federal employees must contact an EEO counselor within 45 days of the alleged personnel action in order to later

9

raise the claims in federal court.  See Park v. Howard University, 71 F.3d 904, 907 (D.C. Cir. 1995), cert. denied, 519 U.S. 811 (1996); 42 U.S.C. § 2000e-16(c); 29 C.F.R. § 1614.105(a)(1); 29 C.F.R. § 1614.407.

Prior to Morgan, many courts held that a plaintiff did not have to exhaust retaliation claims that arose after the filing of an initial administrative complaint from which the lawsuit arose.  See Nealon v. Stone, 958 F.2d 584, 590 (4th Cir. 1992); Kirkland v. Buffalo Bd. of Educ., 622 F.2d 1066, 1068 (2nd Cir. 1980); Sussman v. Tanoue, 39 F.Supp.2d 13, 21 (D.D.C. 1999) ("most courts have concluded plaintiffs are not required to exhaust administrative remedies for claims of retaliation which arise following the filing of administrative complaints").  However, in the years since Morgan, that reasoning has been undermined.  Keeley v. Small, 391 F.Supp.2d 30 (D.D.C. 2005) (discussing impact of Morgan decision on exhaustion requirements for retaliation claims).

The purpose of this administrative scheme is straightforward.  "Exhaustion is required in order to give federal agencies an opportunity to handle matters internally whenever possible and to ensure that the federal courts are burdened only when reasonably necessary."  Brown v. Marsh, 777 F.2d 8, 14 (D.C. Cir. 1985); see also Sommatino v. United States, 255 F.3d 704, 710 (9th Cir. 2001).  It is important to note that during the period when Defendants processed Plaintiff's administrative EEO complaint, No. AWA-FY2004-0089, Plaintiff was represented by counsel. See initial contact form dated May 25, 2004 (listing Plaintiff's representative as Lisa S. Sanders), Counselor's Report, Ex. 2 attached.

Plaintiff's Amended Complaint states explicitly that "This claim is a new action filed under Title VII of the Civil Rights Act regarding actions taken against the Plaintiff in April

10

2004." Am. Compl. at 2, ¶ 1. Specifically, Plaintiff complains that "the Agency's Notification

of Personnel Action of April 20, 2004, reduc[ed] Plaintiff's salary and terminat[ed] Plaintiff's

leave without pay status in an attempt to force him to retire." Id. at 3, ¶ 2. The claims

concerning his pay and leave status in April 2004 are the only ones that Plaintiff exhausted in the

context of this lawsuit.[3] Plaintiff never described what disability claims he was seeking to

advance during the administrative processing of his complaint and he remained vague throughout

the administrative pendency of his EEO complaint about what "other factors," Am. Compl. at 2,

¶ 1, allegations or claims he was raising. Plaintiff makes this explicit in his Amended

Complaint, claiming that he wanted to raise various issues but that those issues were not reflected

in any investigation. Am. Compl. at 3-4. This is merely a post hoc rationalization. The agency

gave Plaintiff the opportunity to modify the issues proposed for investigation and Plaintiff failed

to do so. Instead, he stated, as he does before the Court, that these "other issues" can be found in

his EEO complaint. Compare Ex. 3 (agency's statement of issues) and Ex. 4 (Plaintiff's

response). He lists these unexhausted allegations or claims in his Amended Complaint at 6.

They are: "time and attendance records, leave, leave buy-back, payroll, insurance, TSP,

accommodations, hostile work environment, age and reprisal. . . ." Am. Compl. at 6.[4]

As part of the administrative process, a Title VII complainant must contact an EEO

counselor. The Counselor's Report corresponding to Plaintiff's administrative complaint states

that "On April 20 [, 2004] management issued SF-50 [sic], rducing [sic] his salary, terminating

---

[3] As explained infra, Plaintiff has numerous other claims before other judges in this district
and before the Court of Appeals.

[4] See Pl. Aff. at 7 (stating in regard to use of leave, that "these issues are being adjudicated in
the U.S. District Court").

his LWOP status even with the knowledge that his docotor [sic] says he is totally disable [sic] through the end of the year." The notes taken by the counselor state that the issues to be addressed include: "extend LWOP as in the past," "stop any termination action," "correct salary," "stop any and all adverse action" and "stop all reprisal activities." Plaintiff's handwritten notation on these materials states that: "This complaint has been resolved to some degree, including the LWOP issue. Written confirmation has been promised via ACR from AHR." Couns. Rep. at Attachment #3.

If the issues raised with a counselor are not resolved, a Title VII complainant can file a formal complaint of discrimination with the agency. Ex 1 attached, Plaintiff's July 11, 2004 formal administrative EEO complaint, No. AWA-FY2004-0089, states that:

> On April 20, 2004, in the U.S. Mail, I received a "Notice of Personnel Action," [a footnote indicates that a copy was attached] that: (1) Reduced my pay from $119,267 to $116,786. (2) Terminated my position. (3) Terminated my leave without pay status on 6/28/04 (4) dated the document 01/30/04. (5) Made effective date 01/01/04. (6) Cited legal authority . . . to backdate and downgrade, as well as terminate.

After reviewing the complaint and counselor's report, the agency sent Plaintiff a letter dated August 10, 2004, accepting certain issues for investigation. Ex. 3. Those issues included: "Were you discriminated against based upon your race (white), color (white), national origin (Native American), sex (male), age [], disability, and reprisal (prior EEO activity) when on April 20, 2004 management issued a Notifification of Personnel Action (SF-50) reducing your salary and terminating you leave without pay status in an attempt to force you to retire?" Id. That letter also stated that any "request for correction to the claim as stated, must be submitted . . . within five calendar days of your receipt of this letter." Id. (emphasis in original). Plaintiff's response,

an August 17, 2004 letter to Tami Wright, states that "I do not wish to claim age in this complaint."  Ex. 4 attached.  That response also states that "The issues stated in the formal complaint are LWOP extension, salary reduction, termination actions, adverse actions, further reprisal.  Additional items were discussed with the counselor and are evidenced in the informal and formal complaint documents."  Id.

Plaintiff failed to raise with the agency any claims beyond his allegations that the April 20, 2004 payroll documentation purportedly terminated his leave without pay status and reduced his salary.  As previously explained, "[e]xhaustion is required in order to give federal agencies an opportunity to handle matters internally whenever possible and to ensure that the federal courts are burdened only when reasonably necessary."  Brown v. Marsh, 777 F.2d 8, 14 (D.C. Cir. 1985).  To allow Plaintiff to go forward in this lawsuit with any other claims (or "additional items" as per Plaintiff's letter) that he failed to explicitly describe for the agency would undermine the very purpose of the administrative exhaustion requirements.

**B.    Plaintiff Cannot Bring the Same Claims in Multiple Lawsuits.**

Plaintiff has been unavailable for work since August, 2000.  Ex. 7, Decl. of Julie Berko at 3.  Because of this, the only possible "new" claim pending before this Court is Plaintiff's complaint about his April 20, 2004 receipt of salary information from the agency.  In an earlier lawsuit, which was dismissed by Judge Urbina and is now on appeal, Plaintiff complained that his supervisor, Carson Eoyang, took away his supervisory duties and failed to accommodate his disabilities.  January 3, 2005 Memo. Opin. in Civil Action No. 01-1964 (RMU) at 2, 6-8.  Plaintiff concedes that his allegations concerning his position and duties at FAA are before the Court of Appeals.  Am. Compl. at 2.  Plaintiff also says that the failure to accommodate his

13

alleged disability is before the Court of Appeals.  Id.  Prior to the events at issue in this lawsuit,

"Plaintiff became totally disabled," and did not return to work.  Id.  Thus, the only claim that

does not appear to be part of his earlier-filed cases seems to be what Plaintiff claims is a "NEW

action . . . regarding actions taken against the Plaintiff in April 2004."  Am. Compl. at 2, ¶ 1.

      However, Plaintiff also claims that the allegations before this Court include: "time and

attendance records, leave, leave buy-back, payroll, insurance, TSP, accommodations, hostile

work environment, age and reprisal. . . ."  Am. Compl. at 6.  To the extent that Plaintiff is raising

claims in this case that are duplicative of earlier-filed ones, they should be dismissed.  As noted,

Plaintiff has at least two other cases pending that involve the same parties and raise claims

similar to those he is attempting to raise here.

      In Woodruff v. USDOT and FAA, Civil No. 05-1367 (RMU), Plaintiff complains of:

"incorrect payroll data . . . leave errors, tax errors, TSP. . . ."  Compl. at ¶ 6.  In addition, Mr.

Woodruff has an appeal pending before the Court of Appeals concerning claims of employment

discrimination.  Plaintiff's appeal concerns the alleged denial of Plaintiff's request to return to

his supervisory duties and contains allegations relating to alleged disabilities, his leave status and

his inability to report to work.  See Appellant's Final Brief at page 8.  Since Plaintiff concedes he

is "totally disabled" and cannot report to work and has been in that status since 1998, Am.

Compl. at 2, his allegations concerning the FAA's failure to accommodate his alleged disability

must be the same as those before the Court of Appeals.  Plaintiff's Second Amended Complaint

in Woodruff v. Mineta, Case No. 01-CV-1964 (RMU), which gave rise to the appeal now

pending before the Court of Appeals, alleges that FAA "Downgrad[ed] Plaintiff's position in an

attempt to reduce his grade," and "revok[ed] the disability accommodations previously granted to

14

Plaintiff." Sec. Am. Compl. at ¶ 12. Mr. Woodruff's Final Brief states that the issues before the Court of Appeals include "a series of events that worked to divest Mr. Woodruff of his substantive professional duties, to remove his reasonable accommodations for his disability, and to retaliate against him . . . ." Final Br. at 8. These include the allegations that Mr. Woodruff: "was threatened with termination; forced to return to work, while totally disabled . . . without any accommodations for his disability," Final Brief at 11-12; that he was "denied access to the Agency health facility; denied sick leave; denied annual leave and subjected to time and attendance and payroll errors; adverse personnel actions and a hostile work environment among other matters," Final Br. at 12; that his requests for "leave restoration" and "buy back have repeatedly been denied by the Agency," Final Br. at 12; that the FAA "offered only a lower paying, non-management position . . . .[that] could result in causing the loss of Mr. Woodruff's workers' compensation benefits," Final Br. at 13; that the FAA "continued to demonstrate a pattern of activity to terminate Mr. Woodruff from his position and to deny his accommodations for his disability," Final Br. at 20; that he was "denied flexible work schedule and telecommuting accommodations" and that "Mr. Woodruff challenges the denial of LWOP extension," and whether he "has been forced to file for retirement." Final Br. at 22. Here, Plaintiff says that his claims include: "failure to accommodate," "attempts to force retirement," "time and attendance records, leave, leave buy-back, payroll, insurance, TSP, accommodations, hostile work environment, age and reprisal. . ." Am. Compl. at 4, 6.

The United States Court of Appeals for the District of Columbia Circuit recently noted that "separate parallel proceedings have been long recognized as a judicial inconvenience." Handy v. Shaw, Bransford, Veilleux & Roth, 325 F.3d 346, 349 (D.C. Cir. 2003) (quoting

Columbia Plaza Corp. v. Sec. Nat'l Bank, 525 F.2d 620, 626 (D.C. Cir. 1975) ("sound judicial

administration counsels against separate proceedings, and the wasteful expenditure of energy and

money incidental to separate litigation of identical issues should be avoided")).  Where two

actions involving the same parties and identical issues are pending in different federal district

courts, the United States Supreme Court has stated that the "general principle is to avoid

duplicative litigation."  Colorado River Water Conservation Dist. v. United States, 424 U.S. 800,

817 (1976) (citations omitted).  That is essentially the situation here.  The Court should dismiss

Plaintiff's duplicative claims in order to avoid the unnecessary time and expense of litigating the

same claim between the same parties in two different courts.  In addition, dismissal would

prevent the potential that different judges within this District and/or the Court of Appeals may

reach inconsistent results if the claims proceed as separate cases.  The Court may, in its

discretion, dismiss a claim that is also raised in another proceeding.  Handy, 325 F.3d at 350-51.[5]

To the extent the Court deems the claims in this lawsuit to have been raised in any of Mr.

Woodruff's other pending cases, those claims should be dismissed.


     **C.**    **It is Well Settled That There is No Cause of Action for the Mishandling of
the Processing of an Administrative EEO Complaint.**

Here, many of Plaintiff's allegations concern the administrative processing of his EEO

complaint.  In fact, Plaintiff complains that the "FAA and DOT have failed to thoroughly, fairly,

---

[5] Handy involved review of the District Court's dismissal of a lawsuit also brought in D.C.
Superior Court and noted that federal courts should decline jurisdiction over such cases only in
"exceptional circumstances."  Here, however, Plaintiff seems to have brought similar claims in
three different federal lawsuits in this circuit.  Consistent with the D.C. Circuit's direction, here
the Court should dismiss the claims in this case that currently are pending in the earlier-filed
actions.

and impartially investigate all of the claims."  Am. Compl. at 6.  <u>See also</u> Am. Compl. at 4, ¶ 3

("The Agency has denied Plaintiff his procedural due process with their intentional denial of

ADR and by controlling the outcome with their use of government paid companies investigating

claims.").[6]  It is well settled that Title VII does not provide a cause of action concerning the

administrative processing of an EEO complaint.  <u>See</u> <u>Carter v. Greenspan</u>, 304 F.Supp.2d 13, 31

(D.D.C. 2004) (citing <u>Nelson v. Greenspan</u>, 163 F.Supp.2d 12, 18 (D.D.C. 2001)).  Thus,

Plaintiff's claims concerning the administrative processing of his EEO administrative complaint

must be dismissed.

### D.    The Alleged April 20, 2004 Action was Not Adverse.

Plaintiff claims that paperwork he received on April 20, 2004 resulted in his salary being

reduced and threatened his termination as of June 2004.  Plaintiff simply has misunderstood the

paperwork he received.  Plaintiff's salary was never reduced, actually it increased pursuant to the

2004 federal pay raise.  Plaintiff currently is on leave without pay status and is receiving

workers' compensation payments from the Department of Labor; thus, he must concede that he

was not, in fact, terminated as a result of any paperwork he received in April, 2004.  Moreover,

whatever workers' compensation payments Plaintiff receives from the Department of Labor are

predicated on Plaintiff's 1997 salary (his salary at the time he was ruled disabled by the

Department of Labor), so any alleged salary decrease has no impact on his current disability

benefits.

When examined closely, Mr. Woodruff's conclusory allegations simply evaporate for

---

[6] <u>See also</u> Am. Compl. at 4 (complaining that contract investigator DSZ for EEO complaint
was "clearly biased," and that FAA "refused to consider mediation").

lack of evidentiary support and because the conduct alleged, even if true, is not actionable under Title VII. A <u>prima facie</u> case of discrimination under Title VII requires a plaintiff to show, among other things, that he was subject to an adverse employment action. <u>Holcomb v. Powell</u>, 433 F.3d 889, 897 (D.C. Cir. 2006); <u>Brown v. Brody</u>, 199 F.3d 446, 452-53 (D.C. Cir. 1999); <u>Lester v. Natsios</u>, 290 F.Supp.2d 11 (D.D.C. 2003), appeal dismissed, 2004 WL 287128 (D.C. Cir. 2004). To constitute an adverse action, the alleged action must involve either a reduction in pay or benefits, or other "materially adverse consequences affecting the terms, conditions, or privileges of employment." <u>Brody</u>, 199 F.3d at 457. Specifically, to meet the "adverse personnel action" requirement, the employee must make a "clear showing" of a "material adverse employment action," such as "'hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'" <u>Id</u>. at 456 (citing <u>Meritor Savings Bank, FSB v. Vinson</u>, 477 U.S. 57 (1986) and quoting <u>Burlington Industries, Inc. v. Ellerth</u>, 524 U.S. 742, 761 (1998)) (other citations omitted); <u>see also</u> <u>Forkkio v. Powell</u>, 306 F.3d 1127, 1131 (D.C. Cir. 2002).

Plaintiff alleges that the Notification of Personnel Action form that he received on April 20, 2004 reduced his salary and indicated that he would be terminated from federal employment. First, the routine payroll action implementing the 2004 pay raise for federal workers merely was ministerial. Plaintiff himself describes the alleged action in this manner in his Amended Complaint, stating that he is challenging, <u>inter alia</u>, "the agency's paperwork involving this adverse personnel action." Am Compl. at 3, ¶ 2. Plaintiff's allegations to the contrary simply reflect his subjective misunderstanding, based upon the language of the form he received. Plaintiff has no evidence, other than the conclusory allegations in his complaint and affidavit,

supporting his claims.

Second, the action was not adverse because the "monthly pay at the time of a claimant's injury or the monthly pay at the time that the disability begins determines the compensation for total or partial disability." Gallucci v. Chao, 374 F.Supp.2d 121, 123 (D.D.C. 2005) (citing 5 U.S.C. §§ 8101(4), 8114 (2000)). Thus, any change in Plaintiff's pay after his physicians declared that he was totally disabled is irrelevant for purposes of his disability payments.

Third, and most importantly, undisputed record evidence demonstrates that Plaintiff's claim that his salary was reduced, that the FAA terminated his position and that his leave without pay status was terminated simply is false. The record shows that Plaintiff's salary actually went up, that he was never terminated and that he remains on leave without pay status from the FAA. Given those undisputed record facts, Plaintiff did not suffer from any adverse action. FAA's July 19, 2004 letter to the Honorable Barbara A. Mikulski explained that Plaintiff "has been on the periodic rolls of the Department of Labor, Office of Workers' Compensation Program (OWCP) since August 13, 2000, and is receiving workers' compensation payments. He continues to have health and life insurance coverage. As a result of Mr Woodruff's OWCP status, the agency has placed him on extended leave without pay (LWOP) . . . Mr. Woodruff will continue to receive OWCP benefits, as long as his physicians' [sic] certify his total disability, regardless of his employment status with the FAA." Ex. 15. That letter also explains that: "Mr. Woodruff alleges that his salary was reduced from $119,267 to $116,768 . . . . [however, a] pay adjustment SF-50 action (effective 01/11/04) shows Mr. Woodruff's salary at $121,954, which includes the retroactive March 2004 pay adjustment and locality pay." Id.

19

The fact that Plaintiff's salary of record actually increased is clearly evident from the record. A Notification of Personnel Action effective January 11, 2004 states that the "Nature of [the] Action" is "CORRECTION" and "PAY ADJ." Ex. 12 at 7, Boxes 5-B and 6-B. That same form states on its face that Plaintiff's "Total Salary/Award" is "$121,954," Box 20C, and that the "SALARY IN BOX 20C INCLUDES A LOCALITY-BASED PAYMENT OF 14.63%. PROCESSED IN ACCORDANCE WITH EXECUTIVE ORDER 13332 DATED MARCH 3, 2004." Ex. 12 at 7.

A separate Notification of Personnel Action effective June 29, 2004 states that the "Nature of [the] Action" is "EXT OF LWOP NTE 12312004" and also lists Plaintiff's total salary as "$121,954." Ex. 11, Boxes 5-B and 12. See also Ex. 6, Aff. of Darlene Freeman; Ex. 7, Berko Aff. at 2. This paperwork is entirely consistent with the paperwork Plaintiff received the previous year, in 2003. Ex. 12 at 5 (salary records for 2003). An SF-50 dated April 13, 2003 shows Plaintiff's salary as $116,786, per the 2003 federal pay raise retroactive to the first pay period of 2003. Id. Defendants' Exhibit 10, a payroll form for 2003, shows that the paperwork Plaintiff is complaining about in April 2004 merely reflects his 2003 salary of $116,786, his salary prior to its retroactive adjustment for the 2004 federal pay raise. Similarly, Defendants' Ex. 12 at 7, another personnel form (an April 4, 2004 SF-50) shows Plaintiff's 2004 pay increase to $121,954 and shows that the 2004 pay increase was retroactive to the first pay period of 2004 as per Executive Order 13332 (March 3, 2004).

**E.    Even If Plaintiff Were to Demonstrate the Elements of a *Prima Facie* Case, There Is No Evidence to Rebut Defendants' Legitimate Non-Discriminatory Reasons for the Challenged Actions and No Evidence That Those Reasons Are Merely a Pretext for an Illegal Motive.**

Plaintiff has been unavailable for work since approximately August, 2000. Decl. of Julie Berko at 3. Plaintiff's claims concerning his supervisor's alleged stripping of his work responsibilities and alleged failure to accommodate Plaintiff's condition concern the period when Plaintiff was available for work at FAA (prior to August, 2000) and thus are not part of this lawsuit. See January 3, 2005 Memorandum Opinion in Civil Action No. 01-1964 (concerning alleged reduction of Plaintiff's duties and alleged failure to accommodate Plaintiff's disabilities by Plaintiff's supervisor, Carson Eoyang). Since those claims are part of a prior lawsuit, the only "new claim" before this Court is Plaintiff's challenge to the purely ministerial task of the delivery of paperwork reflecting the implementation of the government-wide 2004 pay raise for federal workers. That action was performed by the agency's human resources staff, not Plaintiff's former supervisor, Carson Eoyang. See, e.g., Decl. of Darlene Freeman at 1-2. The agency explained its legitimate non-discriminatory reason for the paperwork Plaintiff received: the agency merely was implementing the 2004 federal pay raise. See, e.g., Decl. of Darlene Freeman at 1-2.

A prima facie case of discrimination under Title VII requires a plaintiff to show that: (1) he is a member of a protected class; (2) he suffered an adverse employment action; and (3) the adverse action gives rise to an inference of discrimination. Stella v. Mineta, 284 F.3d 135, 145 (D.C. Cir. 2002). Similarly, in order to establish a prima facie case of reprisal, Mr. Woodruff must show that: (1) he engaged in statutorily-protected activity; (2) the employer took an

employment action adverse against Plaintiff;[7] and (3) there is a causal connection between the

protected activity and the adverse employment action.  Holcomb v. Powell, 433 F.3d 889, 897

(D.C. Cir. 2006); Singletary v. District of Columbia, 359 F.3d 519, 524 (D.C. Cir. 2003);

Mitchell v. Baldridge, 759 F.2d 80, 86 (D.C. Cir. 1985).  Since Defendants' processing of the

paperwork Plaintiff complains of was merely ministerial and was done to implement the 2004

federal pay raise, Defendants are entitled to judgment as a matter of law on Plaintiff's

discrimination and retaliation claims.

### F.      Plaintiff is Not a Qualified Individual with a Disability Because He Cannot Show Up for Work.

The Rehabilitation Act,[8] allows qualified disabled federal employees to bring a lawsuit

against their employer in instances in which the employer has allegedly failed to provide them

---

[7] The status of this element of the prima facie case for reprisal now is unclear as a matter of law in this Circuit.  Rochon v. Gonzales, 438 F.3d 1211, 1219 (D.C. Cir. 2006), pet. for rehearing pending (citation omitted) (holding that retaliation claim requires a plaintiff to demonstrate that the "employer's challenged action would have been material to a reasonable employee").

[8] The procedures set forth in Title VII have been incorporated into the Rehabilitation Act.  See 29 U.S.C. § 794a(a)(1); Moreover, the applicability of the McDonnell Douglas burden-shifting framework, originally developed for actions brought under Title VII, to claims of disability discrimination under the Rehabilitation Act, has been recognized in this Circuit.  See Barth v. Gelb, 2 F.3d 1180, 1186 (D.C. Cir. 1993); accord McGill v. Munoz, 203 F.3d 843, 845 (D.C. Cir. 2000) (citing Aka, 156 F.3d. at 1288); see also Evans v. Davis Memorial Goddwill Industries, 133 F.Supp.2d 24, 29 (D.D.C. 2000).  Furthermore, the same standards apply to both the American with Disabilities Act [ADA], 42 U.S.C. § 12201, et seq. and the Rehabilitation Act of 1973, 29 U.S.C. § 791, et seq. See 29 U.S.C. §791(g), §791(d): "The standards used to determine whether this section has been violated in a complaint alleging nonaffirmative action employment discrimination under this section shall be the standards applied under title I of the [ADA] and the provisions of sections 501 through 504, and 510, of the [ADA] as such sections relate to employment." Based on the interrelationship between these statutes and the applicable standards under each, this memorandum will interchangeably rely on cases interpreting both statutes in the employment context.

with a reasonable accommodation and in instances where the employer has allegedly treated

them disparately because of their disability.  See Aka, 156 F.3d at 1287-88; Carr v. Reno, 23

F.3d 525, 529 (D.C. Cir. 1994); Barth v. Gelb, 2 F.3d 1180, 1186 (D.C. Cir. 1993), cert. denied,

511 U.S. 1030 (1994).  The ADA extends its protection only to a "qualified individual with a

disability," "an individual with a disability who, with or without reasonable accommodation, can

perform the essential functions of the employment position that such individual holds or desires."

42 U.S.C. § 12111(8); Aka v. Washington Hospital Center, 156 F.3d 1284 (D.C. Cir. 1998)(en

banc).

> Even assuming that Plaintiff were an individual with a disability, there is no evidence that
he was a "qualified" individual with a disability for the purposes of performing any FAA
position.  Plaintiff seems to have conceded as much.  Plaintiff admits that his current status is
"total disability" and that he does not currently report to work at FAA.  Pl. Affidavit at 4 ("I am
generally confined to my home and am on OWCP total disability status."); see also FAA's July
19, 2004 letter to the Honorable Barbara A. Mikulski.  In fact, Plaintiff admits that he cannot
work in any job whatsoever.  Pl. Aff. at 4 ("I am not able to work at any job at this time.").  Thus,
Plaintiff is not a "qualified" person with a disability and his disability claims cannot proceed
because Plaintiff cannot perform the basic duties necessary to perform the position: namely,
showing up to work.  See Carr v. Reno, 23 F.3d 525, 530 (D.C. Cir. 1994) ("an essential function
of any government job is an ability to appear for work"); Sampson, supra, 53 F. Supp. 2d at 18
(an "employee who cannot meet the attendance requirements of a job is not a 'qualified'
individual under the ADA") (citing Tyndall v. National Educ. Centers, 31 F.3d 209, 213 (4th Cir.
1994)).

**F.    Plaintiff's Amended Complaint must Be Dismissed Because Plaintiff's Exclusive Remedy for Allegations Concerning Workplace Injuries Is the Workers' Compensation Scheme, Relief That His Amended Complaint States He Has Received Already.**

It is well established that injured federal employees are barred from bringing a court action against the federal government related to work place injuries because Congress has created an alternative scheme to remedy work place injuries through the Federal Employees' Compensation Act (FECA).  5 U.S.C. § 8116(c); <u>Lockheed Aircraft Corp. v United States</u>, 460 U.S. 190, 193 (1983) (no FTCA claim for workplace injuries); <u>Gallucci v. Chao</u>, 374 F.Supp.2d 121, 124 (D.D.C. 2005) (recognizing that "Congress precluded judicial review of claims disputes").  Moreover, Plaintiff already has received the remedy he seeks: Leave Without Pay status and workers' compensation payments.  Pl. Aff. at 4.  Thus, the allegations in Plaintiff's Amended Complaint concerning his disability payments must be dismissed.  Am. Compl. at 4 (concerning alleged paperwork errors), 6 (concerning pay roll issues).

**G.    Plaintiff's Complaint Should Be Dismissed for Failure to Comply with Fed. R. Civ. P. 8(a) and 10(b).**

Despite explicit direction form the Court, Plaintiff's Amended Complaint is vague and confusing.  As noted, Defendants have no way of determining whether Plaintiff timely exhausted his administrative remedies, or even what claims are before the Court.  Plaintiff references numerous issues that he claims were not addressed administratively.  Am. Compl. at 6. Defendant thus is left to speculate about what claims are actually before the Court, whether those claims were raised in prior lawsuits, and whether those claims were exhausted administratively.

Under the Federal Rules, the principal function of the complaint is to give the Defendant

24

fair notice of the claims asserted so that the Defendant can make an adequate response, either by answer or dispositive motion.  Here, the Amended Complaint fails to meet even these minimum requirements.  As both the Court and Defendants reminded Plaintiff, Rule 8(a), Fed. R. Civ. P., states that a claim:

> [S]hall contain (1) a short and plain statement of the grounds upon which the court's jurisdiction depends, unless the court already has jurisdiction and the claim needs no new grounds of jurisdiction to support it, (2) a short and plain statement of the claim showing that the pleader is entitled to relief, and (3) a demand for judgment for the relief the pleader seeks.

Id.  Similarly, Rule 10(b), Fed. R. Civ. P., requires that:

> All averments of claim or defense shall be made in numbered paragraphs, the contents of each of which shall be limited as far as practicable to a statement of a single set of circumstances; and a paragraph may be referred to by number in all succeeding pleadings.  Each claim founded upon a separate transaction or occurrence and each defense other than denials shall be stated in a separate count or defense whenever a separation facilitates the clear presentation of the matters set forth.

Id.

"The purpose of [Rule 8(a)] is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of *res judicata* is applicable."  Brown v. Califano, 75 F.R.D. 497, 498 (D.D.C. 1977) (citing 2A Moore, Federal Practice ¶ 8.13; 5 Wright & Miller, Federal Practice and Procedure, § 1217).  "Beyond this, the rule serves to sharpen the issues to be litigated . . . ."  Brown, 75 F.R.D. at 498 (dismissing pro se plaintiff's complaint because it failed to reasonably inform the adverse party of the cause of action).  Because Plaintiff's Complaint has failed to comply with the Rules, it should be dismissed.

25

## **CONCLUSION**

For the foregoing reasons, the Amended Complaint should be dismissed or, in the alternative, Defendants are entitled to a grant of summary judgment on all claims.

Respectfully submitted,


____/s/_____
KENNETH L. WAINSTEIN, D.C. BAR # 451058
United States Attorney


____/s/_____
RUDOLPH CONTRERAS, D.C. BAR #  434122
Assistant United States Attorney


____/s/_____
PETER S. SMITH, D.C. BAR # 465131
Assistant United States Attorney
United States Attorney's Office
Civil Division
555 4th Street, N.W.
Washington, D.C. 20530
(202) 307-0372


26

## <u>CERTIFICATE OF SERVICE</u>

**I  HEREBY  CERTIFY** that on this 25th day of April, 2006, a true and correct copy of

the foregoing motion to dismiss or for summary judgment, statement of facts, supporting

materials and proposed order were served upon pro se Plaintiff **Phillip S. Woodruff,** by Federal

Express next-day delivery, postage prepaid, to:

**Phillip S. Woodruff**

**10812 Brookwood Avenue**

**Upper Marlboro, MD 20772**

_____
                    /s/

PETER S. SMITH,  D.C. Bar #465131

Assistant United States Attorney

United States Attorney's Office

Civil Division

555 4th Street, N.W.

Washington, D.C. 20530

(202) 307-0372