**Defendants' Exhibit No. 7**
**<u>Woodruff v. Mineta</u>, Civil No. 05-2071 (PLF)**

District of Columbia

I, Julie Brossard Berko (race/black, color/black, national origin, American, sex/female, age (DOB: 9/27/69), no disabilities and no prior EEO complaint activity), Employee Relations Specialist, GS-14, AHL-100, Office of Labor and Employee Relations, Office of Human Resources Management, make the following statement freely and voluntarily to Mary Anne Brennan, who has identified herself to me as an EEO Contract Investigator for the following federal agency: Federal Aviation Administration, knowing that this statement may be used as evidence. I understand that this statement is not confidential and may be shown to the interested parties (those with a legal right to know). I hereby solemnly swear:

1. I have been in this position since August 2001[1]. I now report to Melvin Harris, Director of the Office of Labor and Employee Relations. Chris Comer was my previous supervisor for about three years. In addition, Candi Cavanaugh was my team leader for the past year.

2. I met Complainant during a deposition in 2002 and again in 2004 during a prehearing settlement conference. Chris Comer was present during this prehearing settlement conference.

3. I am aware of his work related injury and the car accident that may have exacerbated this injury. In July 2003, we received second opinions from Department of Labor (DOL) about his medical condition.

4. I was aware of his national origin [Native American] since it was one of the bases for his complaint.

---
[1] I was reassigned to a new position, Special Asst, GS-14, AHL-1 effective 09/05/04

Page 1 of 4

Affiant's Initials _JBB_

1

5. The SF-50 (EXT OF LWOP NTE 06/28/04 effective date 01/01/04) at issue was prepared and approved in January 2004. However, it was not sent to the Complainant until April 2004, due to an administrative error. Jarie Douglas was responsible for sending the SF-50 to Complainant. The pay ($116,786) indicated on this SF-50, was his salary before the 2004 pay increase. He does not receive this amount since he is on worker's compensation (periodic rolls) and receives his pay through DOL and charged back to the FAA. He was later sent an updated SF-50 (dated 01/11/04) in July 2004, which reflected the pay adjustment and retroactive increase to the pay adjustment that was approved in March 2004. Complaint did not receive the actual SF-50 until he sent a letter to his Congressman, Steny Hoyer, asking Hoyer's assistance with what he believed was a reduction in his salary. After looking into the matter, we discovered that Complainant never received the updated SF-50 which reflected the pay adjustment ($121,954).

6. In response to his allegation that the SF-50, effective January 1, 2004, should indicate a salary of $119,267, there is no personnel action that reflects this salary amount. I do not know how he came up with this salary. His current salary, as reflected on his most recent SF-50, is $121,954.

7. I was not involved in the issuance of the SF-50 at issue since I was on maternity leave in January 2004 when the action was processed. But my understanding from Chris Comer was that Complainant communicated that he would be able to return to work within a year, and based on this information, the agency extended the LWOP until June 28, 2004. In addition, during the 2002 deposition, I heard Complainant state that he thought he could come back to work in a year. He is now on LWOP until the end of the calendar year, December 31, 2004.

8. What Complainant contends, that the SF-50 was sent to him in April 2004 to intimidate and

Page 2 of 4                                                      Affiant's Initials



retaliate against him, does not make sense. There was no correlation between the settlement negotiations or court proceeding and the processing of the SF-50. The SF-50 was prepared and signed in January 2004, and because of an administrative error it was not sent to him at that time. This action took place long before the settlement conference and court proceedings that were scheduled by a third-party (the Assistant United States Attorney).

9. We have been extending his LWOP every six months. During the prehearing conference in 2004 he said he might come back in a year and that is why we have extended it for another six months. However, he has been saying this since 2001. In addition, Complainant's letter to Steny Hoyer requested that LWOP be extended until December 2006.

10. Complainant has been on the periodic rolls of DOL since August 2000. Since that time, there have been reorganizations and I do not know where he would fit in the organizational chart today. His boss is no longer there and some of his previous colleagues now work in the Office of Employee Relations, as a result of the most recent reorganization and abolishment some of the training divisions.

11. There is no other similarly situated employee that I am aware of. We usually keep an employee receiving worker's compensation benefits (for lost wages) on LWOP for a minimum of one year since the employee has restoration rights to their position if they fully recover within one year. After the one year, the agency has no obligation to restore the employee to their position or a like position. Typically, the employee either returns to work (within the one year) or based on medical documentation that there is no prognosis of their return, the employee is terminated for unavailability. Complainant is the only employee that I am aware of that we have kept on the periodic rolls well beyond the one year.

Page 3 of 4

Affiant's Initials



12. I deny that I discriminated or retaliated against Complainant.

I have read the above statement, consisting of 4 pages, and that it is true and complete to the best of my knowledge and belief. I understand that the information I have given is not to be considered confidential and that it may be shown to interested parties.

Signature

10/01/04
Date

SUBSCRIBED AND (SWORN TO) (AFFIRMED) BEFORE ME AT FAA Headquarters ON THIS 1st DAY OF OCT, 2004

(INVESTIGATOR'S/WITNESS'S SIGNATURE)

Page 4 of 4

Affiant's Initials



# PRIVACY ACT NOTICE TO EEO COMPLAINT INTERVIEW WITNESSES
## (OTHER THAN COMPLAINANT)
## FOR DISCRIMINATION COMPLAINT INVESTIGATION INTERVIEW

### GENERAL

This information is provided pursuant to Public Law 93-579 (Privacy Act of 1974), December 31, 1974, for individuals supplying information for inclusion in a system of records.

### AUTHORITY

The authority to collect the information requested by affidavit, statement or other type of testimony is derived from one or more of the following:

Title 5, Code of Federal Regulations, Sections 5.2 and 5.3; Title 29, Code of Federal Regulations, Section 1613/1614; Title 5, United States Code, Sections 1303 and 1304; Title 42, United States Code, Section 2000e-16; and Executive Order 11478, as amended.

### PURPOSES AND USES

The information you supply will be used along with data developed to resolve or otherwise determine the merits of the equal employment opportunity (EEO) complaint of discrimination and/or reprisal. This information may be furnished to designated officers and employees of agencies and departments of the Federal Government in order to resolve or otherwise determine the merits of the EEO complaint of discrimination and/or reprisal. The information may also be disclosed to any agency of the Federal Government having a working relationship with regard to Equal Employment Opportunity Commission activities, or to others for uses as published in the Federal Register.

### EFFECTS OF NON-DISCLOSURE

Disclosure of the information sought is voluntary; however, failure to furnish the information will result in a direction by the head of the agency, or his/her designated representative, to produce or provide such information as is available. Failure to provide the information at that time may result in the initiation of disciplinary proceedings against you up to and including removal. Applicants in such cases may be refused employment.

Disclosure of information by present or prospective Government contractors is also voluntary, although failure to furnish the above requested information where the contract so provides may result in administrative sanctions, including disqualification to enter into a contract or termination of an existing contract.

_____  
Signature of Interviewer

_____  
Signature of Affiant

_____  
Date

_____  
Place

(5)