UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

PHILLIP S. WOODRUFF, )
)
   Plaintiff, )
)
v. )
_Norman Mineta, Secretary_ ) Case No.: 05-CV-2071 (PLF)
U.S. Department of Transportation, )
Federal Aviation Administration )
)
   Defendants )
)
)
)

### PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT OR, IN THE ALTERNATIVE FOR SUMMARY JUDGMENT

COMES NOW, Plaintiff, Phillip S. Woodruff, ("Woodruff") and respectfully submits this Opposition and in furtherance thereof states:

### STATEMENT OF FACTS

This case concerns actions taken against the Plaintiff in April 2004 following the Agency's Notification of Personnel Action of April 20, 2004. Plaintiff received via U.S. Mail, a "Notice of Personnel Action" that reduced his pay from $119,267.00 to $116,786.00; terminated his position with the FAA; terminated his Leave Without Pay Status to be effective on June 28, 2004. The Plaintiff has shown that this is a prima facie case and that there is pretext in the agency's actions, and that there are genuine issues of material facts. The Plaintiff believes that the law provides entitlement to the jury trial that is necessary and appropriate to decide on these matters.

RECEIVED

JUN 16 2006

NANCY MAYER-WHITTINGTON, CLERK
U.S. DISTRICT COURT

A.  **Administrative Procedures**

Plaintiff commenced contacting the agency Office of Civil Rights management and an agency EEO counselor regarding the actions of April 20, 2004 on or before May 19, 2004, within 45 days of April 20, 2004, and timely filed an informal administrative complaint. Plaintiff requested mediation on numerous occasions. Agency management would not agree to ADR, and kept delaying their decision. In addition, the Plaintiff asked that the FAA Office of Civil Rights continue counseling to resolve **all** issues of his complaint. Plaintiff was told that it was not possible because of the limited extension and the agency would not grant additional extensions. Plaintiff had authorized additional extensions of time, which were ignored. It is clear, in the record, that Plaintiff asked that the FAA Office of Civil Rights to continue counseling to resolve additional issues and he was told that it was not possible because of the limited extension. The Counselor fails to state that Plaintiff agreed to additional extensions to resolve other matters as is indicated on the Formal Complaint form. This evidences the agency's rush to the conclusion of the investigation.

That following the limited agency investigation regarding the issues raised in the April 20, 2004 letter, Plaintiff timely filed a formal complaint that was reviewed by the U.S. Department of Transportation, Office of Civil Rights. The Office of Civil Rights contracted with DSZ, Inc. to prepare the Report of Investigation. All requests by Plaintiff for mediation and ADR were denied. This implies the agency's reliance on Greenspan, averring that the agency is not required to properly investigate a valid claim.

### B.   District Court Proceedings

As a result of this decision, Plaintiff filed a timely Complaint, as allowed by law, with the U.S. District Court. "Within 90 calendar days of your receipt of this action, you may file a civil suit in an appropriate U.S. District Court." This case deals **only** with the EEO claim filed as a result of the April 20, 2004 letter by the Agency reducing his salary and forcing Plaintiff to retire and matters noted in the record and complaint.

This case involves only the discriminatory acts, reprisal and omissions regarding Plaintiff's salary, LWOP and payroll taken by the agency, **on or about April 20, 2004 through the dates covered by the complaint,** against the Plaintiff. Other cases and matters referenced by Defendant mislead the court regarding Plaintiff's actions or intentions. Plaintiff references other discriminating actions of the Defendant agency, both before and after this specific series of events, only for the purpose of illustrating a "pattern" of reprisal and discrimination by the Defendant. This case stands on its own merits.

### ARGUMENT

The Motion to Dismiss and/or in the alternative for Summary Judgment should be denied.

### I.   Standard of Review

Unless the moving party can establish that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law, summary judgment is not appropriate. *Breen v. Dep't of Transp.* 282 F. 3d at 841 (*citing Anderson v. Liberty Lobby, Inc*, 477 U.S. 242, 247 (1986)). This Court "must review the evidence in the light most favorable to the non-moving party." *Breen,* 282 F. 3d at 841; *Aka II,* 156 F. 3d at 1288. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Anderson,* 477 U.S. at 255. The district court should not

intrude on the function of the jury by granting summary judgment. Credibility determinations, weighing of evidence, and drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether his ruling is on motion for summary judgment or for directed verdict; evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor. Fed.Rules Civ.Proc.Rules 50(a), 56(c), 28 U.S.C.A. The Plaintiff has shown that there is substantial genuine issues of material fact that must be decided by a jury. Trial court should not act other than with caution in granting summary judgment and may deny summary judgment where there is reason to believe that the better course would be to proceed to a full trial. Fed.Rules Civ.Proc.Rule 56(c), 28 U.S.C.A. To defeat summary judgment respondents did not have to show that a jury could find actual malice with "convincing clarity." The court based this conclusion on a perception that to impose the greater evidentiary burden at summary judgment "would change the threshold summary judgment inquiry from a search for a minimum of facts supporting the plaintiff's case to an evaluation of the weight of those facts and (it would seem) of the weight of at least the defendant's uncontroverted facts as well." *241 U.S.App.D.C., at 253, 746 F.2d, at 1570.* The court then held, with respect to nine of the statements, that summary judgment had been improperly granted because "a jury could reasonably conclude that the ... allegations were defamatory, false, and made with actual malice." Id., at 260, 746 F.2d at 1577.

    Defendants have tried to confuse the court by making false statements and stating that other cases filed by the Plaintiff involving the agency are the same as this case. This is simply not true. Though they involve the same parties, *they do not involve the same claims.* The Defendant has tried to bring the other claims into this case. The Plaintiff has not. Likewise, Plaintiff has shown that this is the proper jurisdiction by a preponderance of the evidence. Therefore this case should not be dismissed.

4

## II.     Plaintiff Properly Exhausted Administrative Remedies

Plaintiff contacted the agency Office of Civil Rights prior to discussing the matter with the EEO Counselor on May 19, 2004, following his receipt of the agency letter of April 20, 2004. (Defendant notes that Plaintiff was represented by counsel, i.e. Lisa Smith Sanders, in May 2004). Plaintiff's representation of counsel ended shortly thereafter.) Plaintiff noted the agency's actions to reduce his salary, terminate his leave without pay status and force retirement, in addition to the other matters noted on the initial complaint. (Exhibit 1)

Plaintiff noted six specific issues in his initial complaint: (1) "Reduced my pay from $119,267 to $116,786; (2) Terminated my position; (3) Terminated my Leave Without Pay Status on 6/23/04; (4) Dated the document 01/30/04; (5) Made effective date 01/01/04; (6) Cited legal authority PL. 104-50 as authority to backdate and downgrade as well as terminate. I believe this was discrimination for all the reasons stated in my complaint." (Exhibit 1)

Plaintiff's relief sought was as follows: "(1) Extension of LWOP until able to return to work with the FAA; (2) Restoration of salary to Grade 15 with all increases due; (3) No termination of position – including removal from senior manager position; (4) No further or future adverse personnel actions; (5) No further reprisal or discrimination. Special Note: I remain open to mediation/ADR discussion on all issues." (Exhibit 1)

Plaintiff referred to the agency's discrimination tactics and the agency's reprisal actions to show the "history/pattern" of the agency's behavior in the past. Plaintiff was not asking the EEO counselor or the court to adjudicate these particular matters. The Plaintiff is referring to this history to show the Defendant's pattern of discrimination and reprisal; and that the Defendant has acted in this particular case with this same pattern. This is an ongoing pattern by the agency. (Present history now shows that the agency has done all of the above.)

5

During the EEO process, Plaintiff noted that the agency agreed to extend the LWOP until December 2004, *after the intervention by Plaintiff's Congressman and Senator*. Indeed, even after this intervention, the agency *still* never produced the "corrected" SF50 until after they terminated Plaintiff in 2005. This SF50 was still incorrect and remains to this day. Other issues within the EEO complaint had not been resolved, i.e. the salary decrease and the threat of termination of Plaintiff's employment with the FAA, no further reprisal, no further, discrimination. Plaintiff asked that mediation be initiated to solve all of these issues completely. His requests were ignored at all levels.

As cited in *Carter v. Greenspan*, 304 F. Supp. 2d 13, "As in general disparate treatment cases, "adverse personnel action" can result from retaliatory actions of management that have materially adverse consequences affecting terms, conditions, or privileges of employee's position." Civil Rights Act of 1964, § 704(a), as amended, 42 U.S.C.A. § 2000e-3(a).

### III.    Plaintiff Has Raised Genuine Issues of Material Fact

The District Court should hear the case on its merits of these claims. There is genuine issue of material facts regarding the exhaustion of administrative remedies, the claims actually made by the Plaintiff, and whether or not the actions by the agency were adverse actions. These are issues that are to be determined by a jury. "[i]t is true that the issue of material fact required by Rule 56(c) to be present to entitle a party to proceed to *249 trial is not required to be resolved conclusively in favor of the party asserting its existence; rather, *all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial.*" (Emphasis added) 391 U.S. at 288, 289, 88 S. Ct. at 1592. Genuine issues of material fact exist in whether or not this is just an "paperwork" error as the agency alleges, whether or not these actions affect the Plaintiff's

6

retirement benefits and insurance benefits, whether or not the agency had ever intention to force Plaintiff to retire. Additional discovery, that has not yet been done, and there is prima facie evidence that will show that the agency had pretext in ending Plaintiff's affiliation with the FAA; that they had no intention to have the Plaintiff ever return to his position if and when he would have been able to do so.

"To be certain, Rule 56 "*mandates* the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552 (emphasis added). Plainly, Rule 56 means what it says: "judgment ... shall be rendered *forthwith* if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Plaintiff has not had an opportunity to conduct discovery in this matter. Discovery will show the acts of the agency were not just a mere paperwork error, and that there was pretext to end Plaintiff's LWOP, reduce his salary, and force Plaintiff to retire. Fed.Rules Civ.Proc.Rule 56(c), 28 U.S.C.A. Plaintiff has shown that the agency took no action to change the LWOP status or his salary until after he had contacted his Congressman and Senator, well after his contact with the EEO counselor and his complaint has been filed. In addition, the documents show that all SF50s were backdated several months following Plaintiff's contact with his Senator and Congressman. Discovery will also show that the Plaintiff's current salary has again been reduced, that his actual retirement pay benefits and insurance benefits are in fact affected by this reduction in salary and that he has been forced to retire due to the actions of the agency. Discovery will also show that the agency

had no intention to ever allow the disabled Plaintiff to return to his position with the FAA. Even without the discovery, Plaintiff has met the burden and summary judgment is inappropriate.

### IV.    Facts show that Plaintiff is not Bringing the Same Claim as in other Lawsuits

*This case involves only the adverse actions of the agency related to April 20, 2004 notice to Plaintiff and the subsequent EEO counseling, complaint and investigation.* Those acts are clearly stated in the complaint. This involves the SF50 filed in 2004 by the agency with its letter of April 20, 2004 wherein the agency decreased Plaintiff's salary. This involves the acts of the agency to withdraw his LWOP as of June 30, 2004, which would cause the Plaintiff to retire. The other issues include payroll issues and other issues (Exhibit 1) that have never been resolved.

While the agency has a "history" of actions against the Plaintiff the claims made by the Plaintiff in this case, before this court, involve only those actions occurring on or about April 2004, by the agency and have never before been adjudicated by any court.

As noted in Celotex, "There is no requirement that moving party support its motion with affidavits or other similar materials negating the opponent's claim; and nonmoving party need not produce evidence in a form that would be admissible at trial in order to avoid summary judgment." *Celotex v. Catrett*, 477 U.S. 317 (1986)

(While the Defendant has brought up the other cases involving the Plaintiff and states that these issues allegedly have been decided, the Defendant fails to note that that particular case is now on Appeal.)

8

## V. Facts show that the April 20, 2004 Action, and related actions, were an Adverse Action and shows Pretext

The documents sent to the Plaintiff clearly show that his salary was affected and decreased by the agency. Plaintiff certainly has not misunderstood these documents.

The documents received by the Plaintiff in April 2004 showed that his LWOP status would end in June 2004. The agency knew that Plaintiff was on Workers Compensation status, due to an on the job injury, was totally disabled and would not be able to return to work in June 2004 pursuant to the medical documentation Plaintiff provided the agency. As a result of the agency's termination of LWOP status, Plaintiff would have to submit his retirement papers in order to keep from losing his Federal retirement benefits. The agency denied any accommodation for Plaintiff's disability and refused to restore him to his job and benefits. (Agency officials have testified that the agency did not want Plaintiff to return to the FAA with or without accommodations). The actions of the agency clearly show pretext.

The agency **has decreased** Plaintiff's salary. This was done subsequent to the letters sent to Senator Mikulski and Congressman Hoyer by the agency stating that everything had been corrected. The agency misled members of both Houses of Congress just as they are attempting to mislead the court. Further, since the initiation of this case, Plaintiff has been forced by the agency to retire. The decrease in his salary has affected Plaintiff's retirement annuity and his insurance benefits. **Plaintiff's retirement annuity and benefits are based on his salary at the time of retirement as noted on the SF50s.** (These are **Not** the benefits he is receiving through Workers' Compensation - which is less than 50% of Plaintiff's Federal salary s a senior manager official.) This reduction dramatically reduces his high three average salary and what Plaintiff will receive as his retirement annuity, if his workers compensation benefits end. This action has immediately reduced Plaintiff's current life insurance benefits as well. These actions are

9

"materially adverse consequences affecting the terms, conditions or privileges of employment." *Brown v. Brody*, 199 F. 3d. at 457. Plaintiff has met the requirement showing an "adverse personnel action" in that this decision *clearly* caused a significant change in his retirement benefits. *Id* at 456 (*citing Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57 (1986).

Defendant refers to an SF50 showing Plaintiff's salary as being $121,954, effective 1/11/04. Defendant fails to note that this SF50 is filed *after* the intervention by the Plaintiff's Senator and Congressman and in fact is backdated and was not filed until June 2004. "We resolve factual controversies in favor of the nonmoving party, but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F. 3d. 1069. Plaintiff clearly shows that there is evidence of contradictory facts.

### VI. Facts show that Plaintiff's Claim before this Court does not involve Workers Compensation Relief or Disability payments

Plaintiff's claims regarding the SF50 and the change in his pay has nothing to do with his Worker's Compensation benefits. Defendant is trying to confuse the matter. Plaintiff does not make any issue regarding his Workers' Compensation benefits or any benefits received through Workers' Compensation. Plaintiff does not make any issue regarding his disability payments received through Workers' Compensation.

Plaintiff's claim involves the decrease in his pay on the SF50 (and which did occur) that affects his *retirement* benefits and insurance, his reinstatement rights, and pay. This does NOT involve Workers' Compensation benefits. These are two different issues and Workers' Compensation benefits and Disability benefits are not directly at issue in this particular case. The Defendant has clearly twisted the issues in this matter. This case is specifically about the adverse personnel actions beginning on April 20, 2004.

10

### VII. Facts show that Plaintiff has Complied with Fed. R. Civ. P. 8(a) and 10(b)

Plaintiff has clearly shown the claims that are at issue in this matter. The Defendant has attempted again to confuse the case and bring in issues that are irrelevant to this case. Plaintiff has shown by a preponderance of the evidence presented that there are a genuine issues of material fact; that this is a new claim that has not been brought before any court; and that all administrative remedies were exhausted.

The Plaintiff has clearly informed the Defendant of the cause of action in this matter. The Defendant chooses to act confused and bewildered and can properly prepare an adequate defense in this matter if the Defendant so chooses. The Plaintiff has complied with all the Rules of the Court.

### CONCLUSION

For all the reasons set forth above, the Court should deny Defendant's Motion for Summary Judgment and/or Motion to Dismiss and should proceed with this case before a jury.

Respectfully submitted,

_____
Phillip S. Woodruff, *Pro Se*
10812 Brookwood Avenue
Upper Marlboro, Maryland  20772
(301) 868-9383
*Plaintiff*

Dated:       June 16, 2006

11

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

PHILLIP S. WOODRUFF,           )
                               )
     Plaintiff,                )
                               )
v.                             )
                               ) Case No.: 05-CV-2071 (PLF)
U.S. Department of Transportation, )
Federal Aviation Administration )
                               )
     Defendants                )
                               )
                               )
_____)

### AFFIDAVIT OF PHILLIP S. WOODRUFF

I Phillip S. Woodruff (Plaintiff) voluntarily and knowingly make the following statements:

Plaintiff does not either admit nor deny each and every of the averments or affidavits made by the Defendant. However, Plaintiff notes the following:

1. Plaintiff has not been on disability since 1998. Plaintiff has been on disability since 2000.

2. The agency did not extend Plaintiff's LWOP until able to return to work.

3. Plaintiff's SF50s were never properly corrected to show any salary increase.

4. Plaintiff's SF50s were again changed to show additional decreases in salary.

5. Plaintiff's LWOP status was terminated in June 2005.

6. Plaintiff was originally forced to retire in June 2005.

7. Plaintiff has been forced to retire from the FAA.

8. The SF50 allegedly corrected in this matter was not received until July 2005, after the agency terminated Plaintiff from his position. This SF50 is still incorrect.

9. Plaintiff clearly sets out allegations in his Amended Complaint that have not been raised in any other lawsuit or litigation.

10. There is currently an appeal in the *Woodruff v. Mineta*, Case no. 01-CV-1964. Defendant relies on "final" briefs of the Plaintiff in that case that are no longer being relied upon by the Court of Appeals as the court has ordered a new briefing schedule.

11. The claims made in *Woodruff v. Mineta*, Case no. 01-CV-1964 revolve around the discriminatory actions taken by Carson Eoyang and the agency against the Plaintiff in 1998 through 2000.

12. The case of *Woodruff v. DOT/FAA*, Civil No. 05-1367 (RMU) deals specifically with an error in the processing of Plaintiff's alleged salary overpayment only.

13. The other cases in which Plaintiff is involved are NOT parallel or duplicative proceedings and do not involve the same people or same occurrences as in this case.

14. The action by the agency is adverse as his retirement benefits are clearly affected by a decrease in his salary. Plaintiff's retirement annuity is based on the last high three salaries. Due to the decrease in Plaintiff's pay as noted on the SF50s, Plaintiff's retirement annuity is affected as well as his life insurance and other benefits. Plaintiff's *Retirement* benefits are *directly* and immediately impacted by the actions of the agency.

15. Plaintiff does not know why Defendant is talking about disability benefits as Plaintiff makes no claim in this case regarding his Workers' compensation benefits or any disability benefits. Plaintiff makes no claim regarding disability payments.

16. The pay adjustment SF50 effective 1/1/04 allegedly showing Plaintiff's his salary as $121,954, was again decreased.

Respectfully submitted,

_____  6/16/2006
Phillip S. Woodruff

## CERTIFCATE OF SERVICE

I HEREBY CERTIFY, that that not later than the next business day following this _16_ day of _JUNE_, 2006, a copy of the above pleading was sent via U.S. Mail, postage prepaid to:

Peter Smith, Asst. U.S. Attorney
United States Attorney's Office
Judiciary Center Building
555 4th Street, N.W., 10th Floor
Washington, D.C. 20530

U.S. ATTORNEY

ATTORNEY GENERAL

_____
Phillip S. Woodruff