UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                       )
PHILLIP S. WOODRUFF,                   )
                                       )
              Plaintiff,               )
                                       )
      v.                               )        Civil Action No. 05-2071 (PLF)
                                       )
MARY E. PETERS,                        )
Secretary,                             )
United States Department of Transportation, et al.,  )
                                       )
              Defendants.[1]           )
_____)


OPINION

        This matter came before the Court on a motion filed by the defendants Secretary

of the United States Department of Transportation Mary E. Peters, the United States Department

of Transportation, and the Federal Aviation Administration to dismiss the complaint or, in the

alternative, for summary judgment, pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules

of Civil Procedure.[2]  Plaintiff Phillip S. Woodruff, who appears *pro se*, alleges that defendants

_____

        [1]     Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Secretary of
Transportation Mary E. Peters has been substituted for former Secretary Norman Y. Mineta.

        [2]     The briefs submitted in connection with this motion are:  Defendants' Motion to
Dismiss Plaintiff's Amended Complaint or, in the Alternative, For Summary Judgment ("Def.
Mot."); Plaintiff's Opposition to Defendants' Motion to Dismiss Plaintiff's Amended Complaint
or, in the Alternative, For Summary Judgment ("Pl. Opp."); Defendants' Reply to Plaintiff's
Opposition to Defendants' Motion to Dismiss Plaintiff's Amended Complaint or, in the
Alternative, For Summary Judgment ("Def. Reply"); and Plaintiff's Response to Defendants'
Reply to Plaintiff's Opposition to Defendants' Motion to Dismiss Plaintiff's Amended
Complaint or, in the Alternative, For Summary Judgment ("Pl. Surreply").

        Defendants filed their motion on April 25, 2006 with respect to the amended
complaint, prior to the filing of the second amended complaint.  The second amended complaint,

discriminated against him on the basis of his age and his disability, and that they have retaliated against him.  In addition, plaintiff alleges that defendants violated his procedural due process rights.  Upon consideration of the arguments of the parties, and the entire record in this case, the Court grants defendants' motion, dismissing plaintiff's procedural due process claim, and entering judgment for the defendants on plaintiff's age and disability discrimination and retaliation claims.[3]

## I.  BACKGROUND

In August of 1986, plaintiff Phillip S. Woodruff began working for the Federal Aviation Administration ("FAA"), an agency within the United States Department of Transportation's ("DOT").  See Second Amended Complaint ("Sec. Am. Compl.") at 1.  On September 29, 1995, plaintiff suffered an accident on the job.  See id.  Plaintiff went on detail to the Office of the Secretary of Transportation and the United States Senate for the next two years. See id. at 1-2.  During this time, plaintiff had a flexible work schedule and was allowed to telecommute from home, while continuing to work on a full-time basis.  See id. at 1.

On May 1, 1997, plaintiff underwent surgery to treat his work-related injuries. See Sec. Am. Compl. at 1.  For the next nine months, he was placed on total disability.  See id. at 2.  In February of 1998, plaintiff returned to work at the FAA on a part-time basis.  See id.

_____

filed on July 28, 2006, is identical to the amended complaint except that it joins as a defendant then-Secretary of Transportation Norman Y. Mineta.

[3]    The Court entered an Order on March 30, 2007, granting judgment for the defendant on all claims, noting that an Opinion would follow.  It now appears that judgment for defendants is appropriate with respect to some of the claims, but that one must instead be dismissed.  An Amended Order consistent with this Opinion will be issued this same day.

Plaintiff asked defendants to reinstate him to the position of Division Manager, Grade 15, the supervisory position he had held prior to going on medical leave, but defendants denied plaintiff's request.  See id.

In March of 1998, plaintiff's physicians allowed him to resume working full-time, provided that he could maintain a flexible schedule with the option to telecommute.  See Sec. Am. Compl. at 2.  Plaintiff alleges that by September of 1998 defendants cancelled all accommodations, which exacerbated his medical condition and caused him to become totally disabled once again.  See id.  Plaintiff alleges that he was forced to use his accumulated sick and annual leave and returned to leave without pay and workers' compensation status.  See id.

On April 20, 2004, plaintiff received by mail a "Notification of Personnel Action" known as an "SF-50" from the FAA.  See Sec. Am. Compl. at 3; Def. Ex. 7.  Plaintiff alleges that the notification effectively reduced his salary from $119,267 to $116,786, and terminated his leave without pay ("LWOP") status effective on June 28, 2004.  See Sec. Am. Compl. at 3-4.  He alleges that the termination of his LWOP status forced his retirement.  See id. at 4; Surreply at 2.

## II.  DISCUSSION

### A.  Legal Standards

#### 1.  Rule 12(b)(1) Standard

When deciding a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure, the Court may dispose of the motion on the basis of the complaint alone or may consider certain materials beyond the pleadings. "[W]here necessary, the court may consider the complaint supplemented by undisputed facts

evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." Herbert v. National Academy of Sciences, 974 F.2d 192, 197 (D.C. Cir. 1992). This Court has interpreted Herbert to allow a court to "consider such materials outside the pleadings as it deems appropriate to resolve the question whether it has jurisdiction to hear the case." Scolaro v. D.C. Bd. of Elections and Ethics, 104 F. Supp. 2d 18, 22 (D.D.C. 2000) (citing Herbert v. National Academy of Sciences, 974 F.2d at 197), aff'd, Scolaro v. D.C. Bd. of Elections and Ethics, No. 00-7176, 2001 U.S. App. LEXIS 2747, at *1 (D.C. Cir. Jan. 18, 2001); see also Erby v. United States, 424 F. Supp. 2d 180, 182-83 (D.D.C. 2006).

## 2. Rule 12(b)(6) Standard

On a motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court assumes the truth of the material facts as alleged in the complaint, see Summit Health, Ltd. v. Pinhas, 500 U.S. 322, 325 (1991), and the "complaint should not be dismissed unless plaintiffs can prove no set of facts in support of their claim which would entitle them to relief." Kowal v. MCI Commc'n Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994); see also Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Browning v. Clinton, 292 F.3d 235, 242 (D.C. Cir. 2002). The complaint "is construed liberally in the plaintiffs' favor, and [the Court should] grant plaintiff the benefit of all inferences that can be derived from the facts alleged." Kowal v. MCI Commc'n Corp., 16 F.3d at 1276; see also Browning v. Clinton, 292 F.3d at 242; Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir. 2000); Harris v. Ladner, 127 F.3d 1121, 1123 (D.C. Cir.1997). While the complaint is to be construed liberally in plaintiff's favor, the Court need not accept inferences drawn by the plaintiff if those inferences

are unsupported by facts alleged in the complaint; nor must the Court accept plaintiff's legal

conclusions.  See Kowal v. MCI Commc'n Corp., 16 F.3d at 1276; Browning v. Clinton, 292

F.3d at 242.

   While *pro se* complaints are held to a less stringent standard than complaints

drafted by attorneys, see Gray v. Poole, 275 F.3d 1113, 1116 (D.C. Cir. 2002); Amiri v. Hilton

Washington Hotel, 360 F. Supp.2d 38, 41-42 (D.D.C. 2003), a *pro se* plaintiff's inferences "need

not be accepted 'if such inferences are unsupported by the facts set out in the complaint.'"

Caldwell v. District of Columbia, 901 F. Supp. 7, 10 (D.D.C. 1995) (quoting Henthorn v. Dept.

of Navy, 29 F.3d 682, 684 (D.C. Cir. 1994)).  "'A *pro se* complaint, like any other, must state a

claim upon which relief can be granted by the court.'"  Id. (citing Crisafi v. Holland, 655 F.2d

1305, 1308 (D.C. Cir. 1981)).

### 3.  Summary Judgment Standard

   Summary judgment may be granted if the pleadings, depositions, answers to

interrogatories, admissions on file and affidavits or declarations show that there is no genuine

issue of material fact in dispute and that the moving party is entitled to judgment as a matter of

law.  FED. R. CIV. P. 56(c).  Material facts are those "that might affect the outcome of the suit

under the governing law."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see

Holcomb v. Powell, 433 F.3d 889, 895 (D.C. Cir. 2006).  In considering a motion for summary

judgment, the "evidence of the non-movant is to be believed, and all justifiable inferences are to

be drawn in his favor."  Anderson v. Liberty Lobby, Inc., 477 U.S. at 255; see also Mastro v.

Potomac Elec. Power Co., 447 F.3d 843, 849-50 (D.C. Cir. 2006);  Aka v. Washington Hosp.

Ctr., 156 F.3d 1284, 1288 (D.C. Cir. 1998) (*en banc*).  The Court must "eschew making credibility determinations or weighing the evidence."  Czekalski v. Peters, 475 F.3d 360, 363 (D.C. Cir. 2007).

 The non-moving party's opposition, however, must consist of more than mere unsupported allegations or denials and must be supported by affidavits, declarations or other competent evidence setting forth specific facts showing that there is a genuine issue for trial.  See FED. R. CIV. P. 56(e); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).  The non-moving party is "required to provide evidence that would permit a reasonable jury to find" in his favor. Laningham v. U.S. Navy, 813 F.2d 1236, 1242 (D.C. Cir. 1987).  If the evidence is "merely colorable" or "not significantly probative," summary judgment may be granted.  Anderson v. Liberty Lobby, Inc., 477 U.S. at 249-50.  To defeat summary judgment, a plaintiff must produce more than "a scintilla of evidence to support his claims."  Freedman v. MCI Telecomm. Corp., 255 F.3d 840, 845 (D.C. Cir. 2001).  In an employment discrimination case, "[u]sually, proffering evidence from which a jury could find that the employer's stated reasons were pretextual will be enough to get a plaintiff's claim to a jury."  George v. Leavitt, 407 F.3d 405, 413 (D.C. Cir. 2005) (internal quotations omitted) (citing Carpenter v. Fed. Nat'l Mortgage Ass'n, 165 F.3d 69, 72 (D.C. Cir. 1999)).

## B.  Construing Plaintiff's Claims

 Before addressing defendants' motion on its merits, the Court initially must address two issues that arise regarding how to interpret the claims plaintiff brings in his *pro se* Second Amended Complaint.  First, plaintiff alleges that the actions taken by defendants with

respect to the April 20, 2004 notification of personnel action constitute age and disability discrimination pursuant to Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), 42 U.S.C. § 2000e et seq. Title VII, however, does not give rise to a cause of action for age or disability discrimination. The proper statutes under which to bring such claims against the federal government are, respectively, the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 162 et seq., and the Rehabilitation Act of 1973, 29 U.S.C. § 794 et seq. The Court will construe plaintiff's claims as having been raised pursuant to those statutes for two reasons. First, plaintiff is *pro se*. See Gray v. Poole, 275 F.3d at 1116; Amiri v. Hilton Washington Hotel, 360 F. Supp.2d at 41-42. Second, defendants did not raise an objection to plaintiff's incorrect statutory basis. Indeed, in their motion, they actually have construed the complaint as having been brought pursuant to the Rehabilitation Act. See Def. Mot. at 22 n.8.

Second, many of the wide variety of matters that plaintiff asserts regarding his employment -- in his original complaint, his first amended complaint, and his second amended complaint -- were the subject of previous cases before Judge Ricardo Urbina of this Court. See (Original) Complaint at 1-2; (First) Amended Complaint at 1-2; Sec. Am. Compl. at 1-2; see also Woodruff v. Mineta, Civil Action No. 01-1964 (D.D.C. filed Sept. 14, 2001) (Urbina, J.); Woodruff v. Dep't of Transp., Civil Action No. 05-1367 (D.D.C. filed July 8, 2005) (Urbina, J.). Defendants have moved to dismiss any claims arising from these previously litigated matters, arguing that they are barred by previous suits and/or have not been administratively exhausted. Plaintiff disputes this. He has asserted in both his first and second amended complaints, as well as in his opposition and surreply to the defendants' motion, that the claims in this case raise "only the discriminatory acts, reprisal and omissions regarding Plaintiff's salary, LWOP and

7

payroll taken by the agency, **on or about April 20, 2004 through the dates covered by the complaint.**" Pl. Opp. at 3 (emphasis in original); see also Sec. Am. Compl. at 2 ("This claim is a NEW action filed under Title VII of the Civil Rights Act regarding actions taken against Plaintiff in April 2004."); (First) Amended Complaint at 2 (same). Plaintiff goes on to state that he "references other discriminating actions of the Defendant agency, both before and after this specific series of events, only for the purpose of illustrating a 'pattern' of reprisal and discrimination by the Defendant." Pl. Opp. at 3.

Defendants' motion takes note of the explicit statement in plaintiff's amended complaint that the claims relate only to the events of April 2004 and thereafter. See Mot. at 10-11. The argument to dismiss non-existent claims arising from prior events mentioned in the amended and second amended complaints appears to be an unnecessary prophylactic measure by the defendants. The Court therefore will not address the arguments raised with respect to any claims relating to events before April 2004 that defendants have construed, but that plaintiff's second amended complaint specifically disclaims, as being the basis for the instant case. It will address only the "new" claims arising on or about April 20, 2004.

### C.  Administrative Exhaustion

Under the Rehabilitation Act, a federal employee must first exhaust his administrative remedies before bringing suit in a court. See 29 U.S.C. § 794a(a)(1); 29 C.F.R. §§ 1614.103; 1614.105-110; 1614.407. See also Spinelli v. Goss, 446 F.3d 159, 162 (D.C. Cir. 2006); Taylor v. Small, 350 F.3d 1286, 1292 (D.C. Cir. 2003); Judd v. Billington, 863 F.2d 103, 105 (D.C. Cir. 1988). Defendants do not dispute that plaintiff exhausted his claims under the

Rehabilitation Act by seeking EEO counseling within 45 days after the April 2004 pay incident, and subsequently following the relevant EEO complaint procedures. <u>See</u> Def. Mot. at 11 ("The claims concerning [plaintiff's] pay and leave status in April 2004 are the only ones that Plaintiff exhausted in the context of this lawsuit.").

Defendants' motion, however, raises the fact that plaintiff specifically excluded age discrimination as a basis for his administrative complaint. <u>See</u> Mot. at 12-13. In a letter to the EEO contract investigator, Mr. Woodruff expressly stated "I do not wish to claim age in this complaint." <u>See</u> Def. Ex. 4, August 17, 2004 Letter from Phillip Woodruff to Tami Wright. He explained that "the age issue is 'Reserved for Federal Court direct.'" Under the ADEA, a federal employee may bring an age discrimination claim through one of two "avenues." <u>Rann v. Chao</u>, 346 F.3d 192, 195 (D.C. Cir. 2003). First, he may bring the claim directly to federal court "so long as, within 180 days of the allegedly discriminatory act, he provides the [Equal Employment Opportunity Commission] with notice of his intent to sue at least 30 days before commencing suit." <u>Id</u>. (citing 29 U.S.C. § 633a(c), (d)). Notice of intent to sue must go to the Equal Employment Opportunity Commission ("EEOC") itself; notice to the employer agency is insufficient to satisfy the notice requirement. <u>See id</u>. at 198. Alternatively, the employee may follow the EEOC administrative process. <u>See</u> 29 U.S.C. § 633a(b), (c); <u>see also</u> <u>Stevens v. Dep't of Treasury</u>, 500 U.S. 1, 5-6 (1991); <u>Rann v. Chao</u>, 346 F.3d at 195. Mr. Woodruff clearly communicated his intent to take the first avenue with respect to his age discrimination claim in his August 17, 2004 letter to the EEO contract investigator. There is no evidence in the record, however, that he has exhausted that claim by providing the requisite notice to the EEOC.

It is not clear whether the ADEA's administrative exhaustion requirement is jurisdictional or not.  See Rann v. Chao, 346 F.3d at 194-95.  Because this issue is not clear, it also is not clear whether the burden of demonstrating that plaintiff exhausted his administrative remedies is plaintiff's, as an issue of subject matter jurisdiction, or defendants', as an affirmative defense to the claim.  In view of this uncertainty, the Court will give the plaintiff the benefit of the doubt, and not dismiss his age discrimination claim for failure to administratively exhaust by failing to provide notice to the EEOC, as required, before bringing suit in this Court.  It will instead deal with it on the merits.

### D.  Due Process Claim

Plaintiff alleges that defendants violated his procedural due process rights by refusing to consider mediation to resolve this suit and by hiring independent contractors who were partial to the government when investigating plaintiff's claims.  See Compl. at 4-5.  It is unclear whether these allegations are intended to constitute a separate claim or cause of action, or if they are merely factual allegations in support of plaintiff's age and disability discrimination and retaliation claims.  Defendants moved to dismiss this claim (if it is one) on the ground that Title VII does not give rise to a cause of action based on the administrative processing of an EEO complaint.  See Def. Mot. at 18-19.  The Court agrees with defendants.  Title VII does not create an independent cause of action for the mishandling of an employee's discrimination complaints.  See Carter v. Greenspan, 304 F.Supp.2d 13, 31 (D.D.C. 2004) (citing Nelson v. Greenspan, 163 F.Supp.2d 12, 18 (D.D.C. 2001)); see also Kelly v. Barreto, Civil Action No. 05-0900, 2006 WL

2568443 * 4-5 (D.D.C. 2006) (Title VII provides no cause of action based on the failure of an agency to timely process a complaint).

Furthermore, in his opposition brief, plaintiff did not even respond to defendants' argument that there is no cause of action with respect to this claim. "If the opposing party files a responsive memorandum, but fails to address certain arguments made by the moving party, the court may treat those arguments as conceded." United States v. Real Prop. Identified As: Parcel 03179-005R, 287 F.Supp.2d 45, 61 (D.D.C. 2003). Because plaintiff concedes that there is no cause of action to challenge the administrative procedures themselves, the Court will grant defendants' motion to dismiss plaintiff's due process claim (insofar as it constitutes a separate claim).

### E.  Discrimination and Retaliation Claims

Defendant moves for summary judgment on plaintiff's claims of age and disability discrimination and retaliation arising from the April 20, 2004 letter, arguing that examination of the evidence with respect to that letter demonstrates that he did not suffer any of the adverse actions alleged. See Def. Mot. at 17-18. The Court agrees. It therefore entered judgment for defendants with respect to those claims on March 30, 2007.[4]

The McDonnell Douglas burden-shifting framework, first developed under Title VII, also applies to claims for age discrimination under the ADEA and disability discrimination and retaliation claims under the Rehabilitation Act. See Barnette v. Chertoff, 453 F.3d 513, 515 (D.C. Cir. 2006) (applying McDonnell Douglas to ADEA claim); Forman v. Small, 271 F.3d

---

[4]     As noted supra at 2 n. 3, an Amended Order will be issued this same day.

285, 292 (D.C. Cir. 2001) (applying <u>McDonnell Douglas</u> framework to Rehabilitation Act

claims); <u>see</u> <u>also</u> <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 802 (1973).  Under that

framework, the plaintiff must first establish a *prima facie* case of discrimination, the second

prong of which is to demonstrate that he has suffered an adverse employment action.  An adverse

employment action is "a significant change in employment status, such as hiring, firing, failing to

promote, reassignment with significantly different responsibilities, or a decision causing

significant change in benefits."  <u>Broderick v. Donaldson</u>, 437 F.3d 1226, 1233 (D.C. Cir. 2006).

An adverse action has occurred "when an employee experiences materially adverse consequences

affecting the terms, conditions, or privileges of employment or future employment opportunities

such that a reasonable trier of fact could find objectively tangible harm."  <u>Holcomb v. Powell</u>,

433 F.3d 889, 902 (D.C. Cir. 2006) (quoting <u>Forkkio v. Powell</u>, 306 F.3d 1127, 1130-31 (D.C.

Cir. 1999)).

       Plaintiff alleges two adverse actions arising from the April 20, 2004 SF-50 notice.

He alleges that the notice (1) reduced his pay from $119,267 to $116,786; and that it

(2) terminated his LWOP status as of June 28, 2004, forcing him to retire.  <u>See</u> Sec. Am. Compl.

at 3-4.  The Court first notes that plaintiff disputes defendants' evidence with conclusory

allegations, but no record evidence of his own.  The only evidence he purports to have provided

in opposition to defendants' motion (in the alternative) for summary judgment are two self-styled

"affidavits" that have not been sworn or subscribed to in a form that the Court can accept as

evidence within the meaning of Rule 56 of the Federal Rules of Civil Procedure.  Plaintiff states

at the beginning of the first "affidavit" that he "voluntarily and knowingly make[s] the following

statements," and signs and dates the statement.  Pl. Opp. "Affidavit of Phillip S. Woodruff ("Pl.

State. #1"); see also Pl. Surreply "Affidavit of Phillip S. Woodruff" ("Pl. State. #2").  Even were

the Court to accept these "affidavits," the statements contained therein refer either to immaterial

matters such as the defendants' alleged failure to accommodate his disability, a claim that

plaintiff has already stated he does not bring in this suit, see Sec. Am. Compl. at 2; Pl. Opp. at 3,

or constitute conclusory allegations disputing defendants' evidence, without any explanation of

how defendants' evidence is deficient.  Defendants' evidence, it should be noted, includes proper

affidavits from various persons, including from plaintiff himself, in conformity with Rule 56 of

the Federal Rules of Civil Procedure, as well as copies of the disputed April 2004 SF-50 notice,

and other SF-50 notices.

          The first adverse action plaintiff alleges is that the April 2004 SF-50 reduced his

salary.  Because plaintiff was at that time on LWOP status and therefore did not receive any

salary, the pay reflected on his SF-50 was not what he was actually receiving but what he would

have received if he were working. See Def. Ex. 5, October 20, 2004 Affidavit of Phillip

Woodruff provided to Contract EEO Investigator ("Pl. Aff.") ¶¶ 16, 17.  He was at that time on

worker's compensation. See Def. Ex. 7, Affidavit of Julie Broussard Berko ("Berko Aff.") ¶ 5.

Plaintiff claims that the agency's action adversely affected his retirement benefits.  See Pl. State

#1 ¶ 14.  Plaintiff asserted in an October 19, 2004 affidavit submitted to the contract EEO

investigator who investigated his administrative complaint that "the Atlanta pay office"

confirmed to him in writing with a "master pay record" that he should be receiving a salary of

$119,267.  Pl. Aff. ¶¶ 17, 18.  Plaintiff does not provide a copy of that claimed written

confirmation.  Plaintiff believes that the April 2004 SF-50 was a form of harassment and

intimidation by the FAA, intended to influence him in his prior cases before this Court.  Id.

¶¶ 19, 20, 23. Plaintiff also claims that his SF-50s were changed to show additional decreases and never properly corrected to show an increase in his salary.  Pl. State. #1 ¶¶ 3, 4; Pl. State. #2 ¶¶ 5, 6, 7.  Plaintiff does not provide any copies of these allegedly incorrect SF-50s.

The government argues that Mr. Woodruff has essentially misunderstood what amounted to a ministerial matter.  The government presents the following evidence, evidence that is uncontroverted by plaintiff except in vague, conclusory statements in his so-called "affidavits." Defendants prepared an SF-50 for plaintiff that was effective on January 1, 2004 and approved on January 30, 2004.  See Def. Ex. 7, Affidavit of Julie Broussard Berko ("Berko Aff.") ¶ 5; see also Ex. 6, Affidavit of Darlene M. Freeman ("Freeman Aff.") ¶ 7; Def. Ex. 9, Affidavit of Janie R. Douglas ("Douglas Aff.") ¶ 3;  Def. Ex. 10., SF-50 approved January 30, 2004 and effective January 1, 2004.  That SF-50 reflected his salary as $116,786, which was defendant's salary during 2003.  Berko Aff. ¶ 5; Def. Ex. 10.  It was not mailed to plaintiff until April 2004, due to an administrative error.  See Berko Aff. ¶ 5; Douglas Aff. ¶¶ 3, 4;  Def. Ex. 8, Affidavit of Christine Ellis Comer ("Comer Aff.") ¶ 7.  This SF-50 is apparently the one on which plaintiff now bases his complaint, although he has provided no copies himself of this SF-50 or any other.

On April 4, 2004, plaintiff's salary was retroactively increased by Executive Order to $121,954, effective as of January 11, 2004.  See Berko Aff. ¶ 5;  Def. Ex. 12 at 7, SF-50 approved April 4, 2004 and effective January 11, 2004.  Defendants subsequently issued Mr. Woodruff at least two SF-50's reflecting a salary of $121,954, one of which was retroactively effective as of January 11, 2004.  See Berko Aff. ¶ 5; Freeman Aff. ¶ 7;   Def. Ex. 12 at 7, SF-50 approved April 4, 2004 and effective January 11, 2004; Def. Ex. 11, SF-50 approved on July 7, 2004 and effective June 29, 2004.  Although plaintiff claims that his SF-50 should have reflected

14

a salary of $119,267, defendants have demonstrated that the ones subsequent to the Executive

Order that raised federal salaries is actually more than that amount.  Similarly, although he

claims that his SF-50s have not been corrected, plaintiff presents no copies of uncorrected SF-50s

to contradict the ones provided by the defendants.  Considering the evidence in the light most

favorable to plaintiff, he fails to demonstrate that the SF-50 he received in April 2004 had any

"materially adverse consequences affecting the terms, conditions, or privileges of [his]

employment."  Holcomb v. Powell, 433 F.3d at 902.

       Second, plaintiff has alleged that the SF-50 that he received in April 2004

terminated his leave without pay status effective June 28, 2004, forcing him to retire.  See Pl.

Opp. at 1; Pl. State. #2 ¶¶ 4, 8; see also Sec. Am. Compl. at 3-4.  Plaintiff's position has no

merit, and is belied by his own statement to the contrary in his October 19, 2004 affidavit, in

which he stated that he was "now on LWOP through the end of this year."  See Pl. Aff. ¶ 25.

Obviously, Mr. Woodruff cannot maintain now that he was taken off LWOP status and forced to

retire in June of 2004 when, six months after his supposed retirement, he subscribed and affirmed

to the fact that he continued to be an employee of the Department of Transportation on LWOP

status through the end of 2004.[5]  Plaintiff is unable to demonstrate that defendants have taken any

adverse actions against him, and he therefore fails to make out a *prima facie* case for age or

---

[5]       The Court notes that Mr. Woodruff's briefs are internally inconsistent on the issue
of whether he was actually forced to retire on the date alleged in his Second Amended
Complaint.  See, e.g., Pl. Opp. at 9 ("since the initiation of this case, Plaintiff has been forced by
the agency to retire");  Pl. Surreply at 2 ("the April 2004 adverse personnel action . . . terminated
employment and forced retirement on or about June 28, 2004").  The Court, of course, must rely
on the Second Amended Complaint as the basis for Mr. Woodruff's claims, and not the various
briefs that he has filed.

disability discrimination or for retaliation.  The Court therefore will grant judgment to defendants on these claims.

   For the reasons set forth in this Opinion, the Court grants defendants' motion to dismiss plaintiff's due process claim and defendants' motion for summary judgment with respect to plaintiff's age and disability discrimination claims and his claim of retaliation.

   An Amended Order consistent with this Opinion shall issue this same day.


             _____/s/_____
             PAUL L. FRIEDMAN
DATE:  May 9, 2007        United States District Judge

16